MELVIN FREMAREK, Plaintiff and Third-Party Plaintiff-Appellant and Cross-Appellee, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *et al.*, Defendants (Liberty Mutual Insurance Company, Third-Party Defendant-Appellee and Cross-Appellant).

First District (5th Division)   No. 1—94—1551

Opinion filed May 26, 1995.

Susan E. Loggans & Associates, of Chicago, for appellant.

Keevers & Hittle, of Chicago, for appellee.

JUSTICE T. O'BRIEN delivered the opinion of the court:

This appeal involves the humble issue of the adjudication of a statutory workers' compensation lien. Had appellant's counsel presented the issue to the trial court with the minimum investigation of the facts and the law, the issue would have been a visitor to the court house but once. Instead, the controversy resulted in the entry of 21 court orders over a 2 1/2-year period. At its conclusion, the trial court

entered judgment for the workers' compensation carrier for $9,425.75 and denied its Rule 137 petition for fees. (134 Ill. 2d R. 137.) We affirm the judgment for a lien and reverse the denial of Rule 137 fees for the following reasons.

## BACKGROUND

On January 19, 1987, Fremarek sustained injuries during the course of his employment while washing windows at the John Hancock Center in Chicago, Illinois. Fremarek later filed a workers' compensation claim before the Illinois Industrial Commission and received a lump sum settlement in the amount of $19,228.65. Liberty Mutual satisfied the claim pursuant to a workers' compensation policy issued to Fremarek's employer. A statutory lien on behalf of Liberty Mutual was then perfected by operation of the Workers' Compensation Act (Act) against any monies Fremarek might recover from third parties, subject to a *pro rata* reduction for attorney fees and costs, if any. Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b) (now 820 ILCS 305/5(b) (West 1992)).[1]

---

[1]The Act provides in pertinent part:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained or paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer

On January 18, 1989, Fremarek instituted a negligence action against several alleged tort-feasors. One of the defendants eventually agreed to settle the case for $21,000 and issued a draft in that amount to Fremarek's attorney.

Fremarek subsequently sent notice to all of the defendants in the negligence action that he intended to present a motion to adjudicate Liberty Mutual's lien on December 18, 1991. The motion itself was as unspecific as it was brief:

> "Plaintiff, MELVIN FREMAREK, respectfully moves this Honorable Court for entry of an order adjudicating the lien of Liberty Mutual Insurance Company, the workmen's compensation carrier, in the above entitled cause, instanter."

Fremarek also sent notice of the motion to a claims adjuster at Liberty Mutual. However, Liberty Mutual was never joined as a party to the negligence action, nor was its legal counsel notified of the motion, and therefore it did not appear in court.

At the hearing, the circuit court inquired as to who represented the compensation carrier. Fremarek's attorney indicated that he had contacted the adjuster that morning. Counsel informed the court that the adjuster "was checking to see if somebody was going to be here. Apparently their file has been closed. *But she doesn't really know the status* \*\*\*." (Emphasis added.)

The court thereafter proceeded to hear counsel's motion to adjudicate. Although the written motion did not set forth a precise figure to which the lien could be adjudicated, counsel orally made the following request: "I have a letter from [the adjuster] reflecting how much the lien is, $20,148.65. The amount available after fees in case expense [*sic*] in this case after the settlement is available to the plaintiff is $10,023.26. *My request is to have this lien adjudicated to zero.*" (Emphasis added.)

The court inquired of counsel, "Under what authority can I do that?" Counsel responded, "I believe the Court has discretion to adjudicate a lien especially when the lien is twice the amount, more than twice the amount of the distribution to the plaintiff. I believe that liens can not [*sic*] exceed a third of the settlement that is going to be available to the plaintiff." The court summarily reduced the lien to $1,000 and entered an order to that effect.

Forty-one days later, Fremarek's attorney sent a draft in the

___

any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b) (now 820 ILCS 305/5(b) (West 1992)).

amount of $1,000 to the claims adjuster at Liberty Mutual. A cover letter accompanying the draft indicated that the payment was in full and final satisfaction of Liberty Mutual's lien pursuant to the enclosed court order. Liberty Mutual endorsed and cashed the check in February 1992.

Seven months later, Liberty Mutual filed a motion to vacate the order on the grounds that the circuit court lacked personal and subject matter jurisdiction. Liberty Mutual apprised the court of the fact that it was never served with a summons and complaint in the negligence action. The court granted the motion.

Fremarek again moved to adjudicate the lien once the court had jurisdiction over Liberty Mutual. This time Fremarek argued that Liberty Mutual's acceptance of the $1,000 draft constituted an accord and satisfaction. The circuit court rejected that argument. The court then granted Liberty Mutual's cross-motion to adjudicate and reduced the lien, in accordance with the statutory guidelines set forth in section 5(b) of the Workers' Compensation Act, to $9,425.75.

Counsel for Fremarek further moved the court to adjudicate the lien for a third time by filing a motion to reconsider. That motion was summarily denied. The court also denied Liberty Mutual's motion for sanctions pursuant to Supreme Court Rule 137. This latter motion was based in part upon Fremarek's oral misrepresentation regarding the court's authority to completely extinguish the lien as well as the statement that this type of lien cannot exceed one-third of the settlement amount. Both sides appealed.

On appeal, we are asked to consider (1) whether the circuit court correctly ruled that Liberty Mutual's negotiation of the check under these circumstances does not constitute an accord and satisfaction, and (2) whether the circuit court erred in denying Liberty Mutual's motion for sanctions. We answer each question in the affirmative.

I

It is well established that an accord and satisfaction is a contractual method of discharging a debt or claim. The "accord" itself is the actual agreement between the parties while the "satisfaction" is its execution or performance. As in all contracts, courts must look to the parties' intent to determine whether or not the transaction constitutes an accord and satisfaction. (*Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002, 1012, 455 N.E.2d 876.) Such intent is often reflected in the good-faith negotiation of an instrument.

Illinois, like most States, has adopted its own version of the Uniform Commercial Code with respect to the negotiation or use of

an instrument in effecting an accord and satisfaction. (810 ILCS 5/3—311 (West 1992).) The Uniform Commercial Code—Negotiable Instruments (Code) provides in pertinent part:

"§ 3—311. Accord and satisfaction by use of instrument.

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." 810 ILCS 5/3—311 (West Supp. 1993).

■ Thus, in order to establish an accord and satisfaction, a party must ordinarily prove that he or she acted in *good faith* in tendering an instrument as full satisfaction of a claim and that the amount of the claim was either unliquidated or the subject of a bona fide dispute. The drafters' comments to section 3—311 point out that "good faith" is defined in the Code as not only honesty in fact, but also the observance of reasonable commercial standards of fair dealing. They further indicate that the meaning of "fair dealing" will depend upon the facts of each case.

■ In the instant case, Fremarek tendered a draft to a claims adjuster at Liberty Mutual along with a court order indicating that Liberty Mutual's lien was adjudicated to $1,000. That order, however, was procured in the absence of personal jurisdiction over Liberty Mutual and therefore was void *ab initio* and subject to a collateral attack at any time in any court. The order was also the product of questionable notice and the misrepresentations of Fremarek's counsel. We note that counsel's rather specious request to extinguish the lien and his statement that a workers' compensation lien cannot exceed one-third of the settlement were not supported by statutory or case law.

In addition, there is no justification for Fremarek to tender only $1,000 where the Workers' Compensation Act itself provides that, at a minimum, Liberty Mutual is entitled to $10,425.75. Section 5(b) sets forth the following formula for calculating the amount of Liberty Mutual's lien:

Settlement Amount: ....................................................... $19,228.65

    less

25% of Attorney Fees: .................................................. -$4,807.16

    less

Maximum Costs and Expenses: ................................... -$3,995.74

    equals

Total Amount of Lien: ................................................ $10,425.75.[2]

The figures above reflect the full amount for attorney fees and costs ($4,807.16 and $3,995.74, respectively) that Fremarek claims are at issue. Thus, in no event would Liberty Mutual be entitled to less than $10,425.75, and yet Fremarek suggests that the negotiation of a $1,000 check somehow defeats Liberty Mutual's rights to the remaining "statutorily undisputed" difference.[3]

Clearly, the concept of good faith in this context does not encompass the actions of Fremarek's counsel. Indeed, the minimum notions of good faith and fair dealing dictate that Liberty Mutual ought not to be bound by a contract of an accord and satisfaction.

In keeping with the tenor of this litigation, Fremarek further submits that if section 5(b) requires a *pro rata* reduction of the lien for reasonable attorney fees and costs, and that the lien itself therefore is not subject to a precise mathematical calculation, then *ipso facto* the amount of the claim is unliquidated. Of course, as noted above, even if a portion of the claim could be characterized as unliquidated under certain circumstances, Liberty Mutual would still be statutorily entitled to no less than $10,425.75. Thus, because that portion of the lien is fixed by operation of the law, the amount of $10,425.75 is deemed liquidated.

But, more important, the amount in this case cannot be considered unliquidated because Fremarek reduced the "purportedly disputed" claim to judgment. The amount, therefore, was judicially liquidated. Fremarek tendered the draft, and Liberty Mutual thereafter negotiated the instrument, only after judgment was entered.

To be sure, we are not unmindful of the fact that an express

---

[2] The circuit court ultimately awarded Liberty Mutual $9,425.75 after deducting an additional $1,000.00 paid on account.

[3] Even if we were to assume that the good-faith requirement for an accord and satisfaction has been met, the amount of the claim is not subject to a *bona fide* dispute. There simply are no "facts" in the record supporting Fremarek's contention that Liberty Mutual ever disputed the amount of the claim. Unsworn statements and conclusions by counsel in an appellate brief are not sufficient.

intention to appeal from a judgment together with the right to do so may create a dispute as to liability for purposes of an accord and satisfaction. However, Fremarek effectively insulated an appeal by sending the draft to Liberty Mutual beyond 30 days from the date of the judgment. Moreover, there is nothing in the record to suggest that Liberty Mutual negotiated the check in contemplation of releasing its right to an appeal. Thus, the judgment here is not and cannot be deemed unliquidated.

Accordingly, we find that under these circumstances the requirements for an accord and satisfaction have not been met as a matter of law. We affirm the order of the circuit court adjudicating Liberty Mutual's lien in the amount of $9,425.75.

## II

Illinois Supreme Court Rule 137 requires an attorney to certify that "he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after *reasonable inquiry* it is well grounded in fact and is warranted by existing law." (Emphasis added.) (134 Ill. 2d R. 137.) The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. It is not intended to simply penalize litigants for the lack of success; rather, its aim is to restrict litigants who plead frivolous or false matters without any basis in law. *Fischer v. Brombolich* (1993), 246 Ill. App. 3d 660, 664, 616 N.E.2d 743, *appeal denied* (1993), 153 Ill. 2d 559, 624 N.E.2d 806; *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.* (1993), 250 Ill. App. 3d 149, 153, 621 N.E.2d 77.

The granting or denying of sanctions under Rule 137 is entrusted to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. (*Fischer v. Brombolich* (1993), 246 Ill. App. 3d 660, 664, 616 N.E.2d 743, *appeal denied* (1993), 153 Ill. 2d 559, 624 N.E.2d 806.) A trial court exceeds its discretion only where no reasonable person would take the view adopted by it. If reasonable people would differ as to the propriety of the court's action, a reviewing court cannot say that the trial court exceeded its discretion. *Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361.

In evaluating the conduct of an attorney, the court must determine what was reasonable at the time rather than engage in hindsight. (*Lewy*, 211 Ill. App. 3d at 334.) Therefore, the standard to be employed in applying the rule is an objective one. It is not sufficient that an attorney "honestly believed" his or her case was

well grounded in fact or law. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.* (1993), 250 Ill. App. 3d 149, 153, 621 N.E.2d 77.

■ Based upon a review of the transcript and pleadings, we inescapably conclude that neither Fremarek's counsel's request to extinguish the lien, nor his statement to the court that such a lien cannot exceed one-third of a settlement was supported by law. The misrepresentations here did not involve some understanding of complicated facts or some obscure legal principle tangentially related to complex ligation, but rather were limited to a rudimentary issue in an otherwise ordinary case. Indeed, the calculation of a workers' compensation lien from a known settlement figure was itself moved to hearing by Fremarek's counsel, who can thus claim no surprise as to an inquiry from the court regarding the appropriate determination of the lien amount.

Had there been a reasonable inquiry of the facts, no request *could* be made to the court that the lien should be reduced to zero! A simple review of facts peculiarly within the knowledge of Fremarek's attorney would have indicated the following: The settlement amount was $19,228.65; if the 25% for Fremarek's attorney fees ($4,807.16) were deducted as well as *all* of Fremarek's costs and expenses ($3,995.74), then the least Liberty Mutual was entitled to was $10,425.75. If, as Fremarek apparently argues, there could have been a dispute contemplated over the reasonableness of his own costs and expenses, even if true, that fact would result in Liberty Mutual being entitled to *more—not less* of a lien—*and in no event would Liberty Mutual be entitled to zero!*

Had there been a reasonable inquiry as to existing law, no representation could have been made to the court that "liens cannot exceed a third of the settlement" available to the plaintiff. *Continental Casualty Co. v. Sweda* (1969), 113 Ill. App. 2d 423, 428, 251 N.E.2d 65 ("The statute [section 5(b) of the Workers' Compensation Act] does not speak of anything less than full indemnification and we have not been directed to any authority granting jurisdiction to the trial court to make an equitable, or other, distribution"); *Mounce v. Tri-State Motor Transit Co.* (1986), 150 Ill. App. 3d 806, 810, 502 N.E.2d 53 (*full reimbursement* of compensation lien not adequately protected by structured settlement); *Fret v. Tepper* (1993), 248 Ill. App. 3d 320, 326-27, 618 N.E.2d 526 (statute provides protection to employer for *amount of compensation paid*).

Also, had there been a reasonable inquiry as to existing law, counsel for Fremarek would have known that, in the absence of an agreement, he was obligated by the minimum requirements of due process to join the compensation carrier and not merely give it notice

before the court had jurisdiction to adjudicate the lien. *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 431 N.E.2d 58 (jurisdiction over a person cannot be had by serving him with a notice, but attaches only after proper service of summons).

As it is, these representations which reasonable inquiry would have shown to be devoid of any legal merit resulted in protracted litigation both at trial and in this appeal of what should have been a five-minute exercise in statutory application.

In light of the above analysis, we find that no reasonable person would conclude that it was reasonable for Fremarek's counsel to believe at the time he requested adjudication of Liberty Mutual's lien that the court could have adjudicated it to zero or otherwise compromise it to one-third of plaintiff's settlement.

Finally, Fremarek's counsel can take no solace from the fact the misrepresentations at issue were oral rather than incorporated into a written pleading or motion. As our brethren in the Appellate Court for the Fourth District noted, "The oral representations of an officer of the court, when in the form of a motion, should have the same effect as a signed, written motion within the context of section 2—611." (*Modern Mailing Systems, Inc. v. McDaniels* (1989), 191 Ill. App. 3d 347, 351, 547 N.E.2d 762.) Numerous other courts in this State have recognized the close relationship between the written and the spoken word and applied Rule 137 or its predecessor to oral motions as well. (*Brubakken v. Morrison* (1992), 240 Ill. App. 3d 680, 684, 608 N.E.2d 471 ("Plainly, amended section 2—611 was intended to apply to all untrue statements given without reasonable cause to the court, whether active or passive, written or oral"); see also *State of Arizona ex rel. Painter v. Painter* (1992), 238 Ill. App. 3d 796, 803, 606 N.E.2d 298; *Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361.) Besides, the written motion in this case consists of a single paragraph without citation to any legal authority. To allow counsel to orally supplement such an empty motion without consideration of the mandates of Rule 137 would surely frustrate the very purpose of the rule.

For these reasons, we reverse the order of the circuit court denying Liberty Mutual's motion for sanctions pursuant to Supreme Court Rule 137. We must therefore remand the matter to the circuit court for further hearing on the reasonableness of fees and expenses.

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

COUSINS, P.J., and GORDON, J., concur.