JAMES P. WHITMER, Plaintiff-Appellee and Counterdefendant-Appellee, v. LESTER MUNSON *et al.*, Defendants-Appellants and Counterclaimants-Appellants.

First District (1st Division)   No. 1—01—2261

Opinion filed November 27, 2002.

502

Torshen, Spreyer, Garmisa & Slobig, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellants.

Howard C. Emmerman and Deane B. Brown, both of Katz, Randall, Weinberg & Richmond, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff James P. Whitmer (Whitmer) filed a verified complaint and requested injunctive relief against his neighbors, defendants Lester and Judith Munson (the Munsons), alleging that the Munsons intentionally interfered with his contract to reconstruct a seawall and create a boat hoist and platform near his residence. The Munsons responded with a counterclaim and motion for preliminary injunction alleging that Whitmer's construction violated the covenants of the townhouse association to which they both belonged. After extensive litigation, the trial court determined that the Munsons were entitled to a preliminary injunction enjoining Whitmer from resuming construction. Whitmer subsequently dismissed his complaint alleging contract interference against the Munsons. The Munsons then moved for a permanent injunction to prohibit continued construction on Whitmer's property and also moved for a mandatory injunction requiring removal of the improvements made to Whitmer's property. The trial court granted the motion for a permanent injunction without opposition from Whitmer, but denied the Munsons' motion for a mandatory injunction requiring removal. The Munsons then filed a motion for sanctions against Whitmer pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), which was denied by the trial court. The Munsons now appeal the trial court's order denying their motion for sanctions. On appeal, they contend that the trial court erred in failing to apply an objective standard in evaluating their sanctions motion and that the trial court failed to recognize that the litigation was caused by "baseless" allegations made by Whitmer. For the foregoing reasons, we reverse and remand.

## BACKGROUND

The facts of this case, primarily gleaned from the lower court's

findings, show that Whitmer purchased a townhouse in the development known as the River Cottages, located on the bank of the Chicago River, in September 1988. Whitmer was the first purchaser of property in the development. Prior to Whitmer's purchase, the developer/seller of the property created "proposed" restrictive covenants to govern the actions of the townhouse owners. Whitmer requested and the developer/seller agreed to modify the "proposed" covenants to allow Whitmer to erect a boat hoist along the seawall of his property without the consent of the other home owners, provided that approvals were obtained from authorities having jurisdiction over the Chicago River. Further, the restrictive covenants, as altered to accommodate Whitmer, contained drawings that depicted the type of hoist Whitmer had permission to build, and the drawings further specified that the hoist should be "low-profile." Finally, the restrictive covenants provided that developer/seller could modify the restrictions "for any *** reasons deemed by Developer to be in the best interest of property owners."

In December 1989, the Munsons purchased their River Cottage relying on the restrictive covenants as they existed in 1988, as modified to accommodate Whitmer. In that same month, the restrictive covenants were further amended (the 1989 Amendment) pursuant to the developer's determination that the modification was "in the best interests of property owners." The new amendment provided in relevant part:

> "No wall or fences of any height shall be constructed on any lot until after the height, type, design and approximate location therefor shall have been approved in writing by the Committee [the unit owners]."

The parties do not dispute that construction of the boat hoist, seawall and platform in question was governed by this later amendment, which superceded the earlier modification made in 1988.

In October 1993, Whitmer entered into a contract to reconstruct the seawall on his property and to construct a new boat hoist and platform. The plans submitted with the applications for permits, however, did not include the boat hoist. Consequently, Whitmer did not obtain the requisite permits to build the boat hoist from "authorities having jurisdiction over the Chicago River waterway" as was required by the restrictive covenants. Whitmer also did not tell the contractors building the seawall and boat hoist that such permits were required under the controlling restrictive covenants. Moreover, he did not disclose his plans for the boat hoist to his neighbors, the Munsons, and did not receive any approval from the townhouse association "committee" as was required by the later, 1989 Amendment.

In 1994, the Munsons began contacting various agencies, such as

the City of Chicago department of buildings, the mayor's office and the Metropolitan Water Reclamation District, as well as their River Cottage neighbors, attempting to halt Whitmer's construction on the grounds that he did not have the requisite permits and was in violation of the restrictive covenants. In April 1994, in response to the Munsons' conduct, Whitmer filed a verified complaint seeking to enjoin the Munsons from intentionally interfering with his construction contract.

In his verified complaint, Whitmer alleged that he obtained permits for reconstruction of the seawall and for the boat hoist from the City of Chicago, Illinois Department of Transportation and the Army Corps of Engineers. He also alleged that drawings specifically outlining the work to be done were submitted to the agencies. In addition, Whitmer pled that the work contemplated was authorized by the restrictive covenants.

Upon the filing of Whitmer's complaint, the Munsons filed a verified counterclaim seeking to preliminarily and permanently enjoin Whitmer from further construction on the grounds that his construction project was proceeding without the requisite permits and that "the boat hoist and appurtenant structures" being built did not comport with the guidelines set forth in the controlling restrictive covenants. The Munsons also asked the court to order Whitmer to remove all structural components of the boat hoist, which included vertical supports, a concrete platform and a 14-foot portion of sea wall. The Munsons also contemporaneously filed a motion which, in addition to seeking a preliminary injunction to halt construction of the seawall and boat hoist, asked for a temporary restraining order pending resolution of the issues in court.

In May 1994, Whitmer filed a response to the Munsons' motion for preliminary injunction, which he designated as his "Verified Answer to Motion for Preliminary Injunction." In his response, Whitmer admitted that he was bound by the restrictive covenants, denied the allegation that he did not have permits to build the boat hoist, and then admitted that he was currently seeking permits from various government agencies to construct the boat hoist. In that verified response, Whitmer also advanced the affirmative defense of *laches*, asserting that the Munsons were aware of the construction and alleged cause of action for more than six weeks before filing their motion for a preliminary injunction. Whitmer also filed his opposition to the Munsons' request for a temporary restraining order pending resolution of the preliminary injunction motion. The trial court thereupon entered the temporary restraining order prohibiting continued construction on Whitmer's property pending a hearing to determine the request for preliminary injunction.

In June 1994, Whitmer filed a motion requesting that the court deny the Munsons' motion for a preliminary injunction or, in the alternative, that the hearing in progress be stayed pending submission of a revised permit application, on the grounds that the basis for injunctive relief no longer existed. In support of this motion, Whitmer stated that, although he was not conceding that the boat hoist he planned to install violated the restrictive covenants, he would voluntarily remove the main pole of the boat hoist installed on his property. Whitmer also volunteered to provide the Munsons with "copies of the amended application for a boat hoist and committ[ed] not to permit any construction of the boat joist [sic] without permits."

The Munsons countered by filing a response to Whitmer's motion, and also moved for sanctions against Whitmer pursuant to Supreme Court Rule 137. 134 Ill. 2d R. 137. In that response, the Munsons contended that Whitmer's motion impliedly demonstrated that he did not possess the requisite permits as he pled in his original complaint and that his election to remove the boat hoist constituted an admission by conduct that the boat hoist was violative of the restrictive covenants. The Munsons urged that sanctions should be imposed upon Whitmer because his pleadings were not well grounded in fact or law insofar as Whitmer filed a complaint against the Munsons alleging that he had the requisite permits and that his construction project did not violate the restrictive covenants when he knew that: (a) the permit applications submitted to authorities omitted the boat hoist; (b) his contractors were unaware that permits were required under the restrictive covenants; (c) the Munsons were unaware of the plans for the boat hoist; (d) work was stopped on his construction project because he did not have the requisite permits; and (e) he filed applications for permits after commencing the cause of action against the Munsons.

In addition, the Munsons contended that Whitmer was aware that his boat hoist violated the restrictive covenants because Whitmer prepared a document in his own defense, for signature by a River Cottage neighbor, which stated on its face that the hoist, in fact, violated the restrictive covenants. The document stated: "I approve and have no objection to James Whitmer/365 N. Canal installing a Levitator boat hoist behind his home. I understand it deviates from the drawings in the restrictive covenants of the River Cottages." Whitmer thereupon withdrew his motion to deny the preliminary injunction, in which he volunteered to remove the boat hoist, and the trial court took the Munsons' motion for sanctions under advisement.

Thereafter, the Munsons were granted leave to amend their counterclaim. In their amended counterclaim, the Munsons realleged

that Whitmer commenced construction of the boat hoist without the requisite permits and that construction of the boat hoist violated the restrictive covenants insofar as it did not comply with the permit requirements or the drawings depicting an allowable boat hoist. The Munsons then alleged (for the first time) that construction of the concrete seawall and platform on Whitmer's property was also violative of the 1989 Amendment to the restrictive covenants because the construction proceeded without written approval from the committee.

Whitmer thereupon filed a response entitled "Amended Verified Answer to Motion for Preliminary Injunction." In that response, Whitmer purported to raise the affirmative defenses of waiver and unclean hands.[1]

Whitmer, thereafter, filed his "Answer to First Amended Verified Counterclaim." In that answer, Whitmer responded to the Munsons' allegation that he did not obtain the requisite permits by stating that "he obtained permits from the licensing authorities that his architect and engineer advised him were necessary." Whitmer also denied that the construction project violated the restrictive covenants as amended in 1989. In his answer to the amended counterclaim, Whitmer advanced an affirmative defense[2] that the "purported Amendment" to the restrictive covenants discussed in the Munsons' amended counterclaim "was never served, delivered, or otherwise made known to Whitmer prior to the Munson's [sic] service of their motion for leave to file the Amended Counterclaim which was received on October 28, 1994." Thus, Whitmer argued that the "purported amendment" was not binding upon him. Whitmer then realleged the affirmative defense of unclean hands, as well as several other defenses not relevant to this appeal.

Whitmer then amended his original verified complaint against the Munsons realleging:

"5. Whitmer obtained permits from the City of Chicago, the Illinois Department of Transportation and the Army Corps of Engineers before beginning work on the project.

6. All of the work contemplated in the project and allowed by the permits was specifically authorized in the Reservations and Restrictive covenants associated with the property."

Whitmer also sought declaratory relief with respect to the boat

---

[1]Whitmer also asserted the defense of necessity with respect to the construction of the concrete platform. This defense is not referenced in the Munsons' motion for sanctions.

[2]The affirmative defenses filed in this answer are independent from those discussed in Whitmer's "Amended Verified Answer to Motion for Preliminary Injunction."

hoist and asked the court to find that, but for the issuance of permits, the boat hoist in question did not violate the reservations and restrictive covenants. Whitmer also asked the court to declare that the 1989 Amendment to the restrictive covenants was not binding upon him because he did not receive notice of the amendment.

After conducting a hearing with respect to the Munsons' motion for preliminary injunction, the court entered a written order granting the preliminary injunction containing the following findings: (1) that Whitmer did not have the permits required by the restrictive covenants to initiate construction; and (2) that Whitmer withheld information regarding the restrictive covenants from his contractor, and purposely deleted any reference to the boat hoist from the construction plans submitted by his contractors, for purposes of facilitating the granting of general construction permits. Specifically, the court stated:

> "Whitmer contends that he relied upon his contractors to obtain the necessary permits, yet *** [the contractor] who handled the permit process for Whitmer *** did not even see the Restrictive covenants until after the work was stopped on March 29, 1994. *** Whitmer's architect testified that the [boat] hoist had been part of the project from the beginning, yet Whitmer requested the hoist be left out of the plans ***. [The contractor representative] testified that Whitmer instructed him to leave the boat hoist off the plans because 'it wasn't determined what it was; and we didn't want to put something down that would make it more difficult to get a permit for the whole project.' "

The trial court also concluded that Whitmer was bound by the 1989 Amendment to the restrictive covenants based on evidence which established that four different mailings were sent to Whitmer to advise him of the amendment.

> "Although Whitmer claims he never received any of the four mailed letters, this Court finds it more probable than not that at least one notification was received. Whitmer's arguments that his mail delivery was not always reliable *** is not convincing. *** [E]ven if the mail was somewhat unreliable, it is more likely than not that one out of four notices would have reached Whitmer."

Finally, the trial court found that the defenses of *laches*, waiver and unclean hands filed by Whitmer lacked merit. Based on these findings, the trial court entered an order granting the Munsons' motion for a preliminary injunction. On that same day, Whitmer moved to voluntarily dismiss his complaint against the Munsons and his motion was granted.

The litigation between Whitmer and the Munsons continued for several years with respect to the Munsons' motion to enjoin further

construction and to mandate removal of the boat hoist and appurtenant structures from Whitmer's property. In December 1999, Whitmer conceded in open court that the preliminary injunction previously granted to the Munsons should be made permanent to halt any further construction, but he opposed the Munsons' request for a mandatory injunction requiring Whitmer to remove all improvements made to his property prior to the onset of this litigation. The matter was set for trial, and at the close of evidence, the trial court granted the Munsons' motion for a permanent injunction prohibiting further construction of the boat hoist and other structures on Whitmer's property. The court then denied the Munsons' motion for a mandatory injunction, ruling that the structures already in place would be allowed to remain.

The Munsons subsequently filed an amended motion for Rule 137 sanctions contending that the allegations in Whitmer's verified complaint "were not well grounded in fact." The Munsons' motion contended that Whitmer made the following false allegations: (1) that he was in possession of permits for the boat hoist when he did not have them; (2) that he relied upon his contractors to obtain the permits even though they were not made aware of the restrictive covenants; (3) that the Munsons had been given his plans prior to the commencement of construction even though the boat hoist was omitted from the plans at Whitmer's direction; (4) that he was not violating the restrictive covenants even though he prepared and submitted to the court a document signed by another River Cottage owner stating that the boat hoist Whitmer wished to install "deviates from the drawings in the restrictive covenants"; (5) that he continued to claim that he possessed permits even after evidence to the contrary was presented in court; and (6) that he denied receiving mailings concerning the 1989 Amendment to the restrictive covenants.[3] The Munsons further alleged that Whitmer should be sanctioned because he filed defenses that were not well grounded in fact or law. Finally, after highlighting the specific instances in which Whitmer proceeded in the trial court with allegations not based in fact or law, the Munsons alleged that they incurred over $125,000 in attorney fees and costs because of Whitmer's actions.

The court acknowledged that the foregoing representations were false in its order granting the Munsons' motion for preliminary injunction. As noted above, in that order, the court stated that Whitmer was

---

[3] The Munsons also alleged that Whitmer submitted plans to the city for a second hoist without obtaining the proper permits; however, we will not consider this allegation because it does not relate to a false pleading.

bound by the terms of the restrictive covenants, including the 1989 Amendment, despite his representations that he did not receive notice of it. The court also found that Whitmer violated those covenants by failing to obtain the necessary permits to build the boat hoist and that he knew the permits had not been obtained because he directed his contractor not to include the boat hoist in the plans submitted to the permitting authorities. In addition, the trial court found that Whitmer was aware that the boat hoist he intended to build did not comply with the restrictive covenants. The court noted that the covenants "were altered for his [Whitmer's] benefit," that the developer did not intend to give Whitmer "free rein" on the type of hoist he could build as evidenced by the drawings attached to the covenants and that Whitmer, "a self-proclaimed 'boat enthusiast,' " should have been aware that the hoist he was building did not comply with the guidelines set forth in the restrictive covenants. Notwithstanding these prior acknowledgments, the court denied the Munsons' motion for sanctions. In doing so, the court stated:

"I must comment on the fact that in a situation where a plaintiff sues a defendant and a defendant is placed solely on the defensive and must come forward to defend themselves, perhaps the attitude of the Court should be somewhat different than a situation where the defendant literally becomes the plaintiff and actually, that's what happened in this case.

\* \* \*

I can't help but think that the Munsons are really asking me to punish—I use the word 'punish' advisedly—are really asking me to punish Mr. Whitmer; and I'm afraid that if I enter sanctions against Mr. Whitmer here, I'm really allowing myself to become a tool of the vengeance with which the Munsons would like to invoke upon Mr. Whitmer. Perhaps in my own mind I can't countenance Mr. Whitmer's actions. \*\*\* But the next question is can I sit here and whip him because of the fact that he undertook litigation in a fashion which actually turned out against him.

\* \* \*

I don't think the lawsuit was brought to harass the Munsons. I think it was brought because Mr. Whitmer wanted to avail himself of the benefit of having a residence along the river. I can't forget the fact that he was the first one to live on these premises. I think that the reasonable decision here is to leave these parties where I have found them and not to invoke sanctions against either."

The Munsons now appeal the trial court's judgment.

## ANALYSIS

On appeal, the Munsons contend that the trial court failed to ap-

ply an objective standard in evaluating their motion for Rule 137 sanctions and that the court ignored the fact that Whitmer included "baseless" allegations in the complaint which started the litigation. The Munsons specifically contend that the trial court gave no consideration to whether Whitmer had a factual basis for filing the verified complaints in this case and ignored the fact that Whitmer filed these verified complaints knowing that he not only lacked the requisite permits to build a boat hoist, but also that the boat hoist violated the restrictive covenants.

In response, Whitmer first asserts that the Munsons have failed to provide an adequate record to support their claims on appeal and, therefore, consideration of these claims is barred. Alternatively, Whitmer contends that the trial court's denial of sanctions was a proper exercise of its discretion because the Munsons' motion for sanctions was both facially and substantively defective. Finally, Whitmer argues that sanctions should not have been granted because it was the Munsons, rather than Whitmer, who prolonged litigation of the case in the trial court.

Before addressing the substantive merits of the parties' contentions, we first address the procedural issues raised by Whitmer. Whitmer first argues that the Munsons failed to supply this court with a report of proceedings on the preliminary injunction hearing, and as a result, we must presume that the trial court's decision to deny sanctions was correct. We find that this claim lacks merit.

■ It is well settled that the appellant carries the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). Any doubts that may arise from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

■ In this case, the Munsons failed to provide a report of proceedings regarding the hearing on the motion for preliminary injunction as Whitmer alleges. However, the record does contain the relevant pleadings submitted by both parties with respect to the preliminary injunction, as well as an extensively detailed, 44-page, typewritten document prepared by the trial court entitled "Findings of Fact and Conclusions of Law." These findings detailed the relevant testimony of the witnesses and the parties at the preliminary injunction hearing as effectively as any bystanders report. In addition, the record contains the trial court's written decision concerning the preliminary injunction

which sets forth the facts, applicable case law and the trial court's analysis of the issues. We thus conclude that there are sufficient documents included in the record which adequately apprise this court of the evidence presented to the trial court when the decision to deny sanctions was made. See *Department of Transportation ex rel. People v. Interstate Brands Corp.*, 251 Ill. App. 3d 785, 787, 623 N.E.2d 771, 773 (1993) (court determined record was sufficient on appeal where appeal was based on dismissal of counterclaim and the dismissed pleading was not included in trial record because enough documents were included to apprise the court of the circumstances presented in the lower court); *DeVries v. Bankers Life Co.*, 128 Ill. App. 3d 647, 651, 471 N.E.2d 230, 233 (1984) (where report of proceedings was not included in appellate record, court determined that the record contained the "relevant facts" and "it [was] thus not necessary to resort to specific arguments advanced by counsel and the hearing on the motion"). While Whitmer makes several citations to authority in support of his contention that the record is insufficient, we note that none of the cases cited are persuasive or on point to the argument he raises here. Rather, those cases deal with issues such as the failure to make record citations (see *Geneva Hospital Supply, Inc. v. Sanberg*, 172 Ill. App. 3d 960, 527 N.E.2d 611 (1988)) and the failure to include information, such as the trial court's findings and the specific testimony of witnesses, which made it impossible for the court to review the relevant issues on appeal. See *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 703 N.E.2d 114 (1998); *In re Marriage of Blinderman*, 283 Ill. App. 3d 26, 669 N.E.2d 687 (1996). Such is not the case here. Accordingly, we conclude that the record provided by the Munsons in this case is sufficient.

We now turn to Whitmer's claim that the Munsons' motion for sanctions was facially and substantively deficient. Specifically, Whitmer alleges that the sanctions motion failed to: (1) identify the specific allegations to which it was directed; (2) specify the grounds on which the Munsons relied in arguing that Whitmer's allegations were sanctionable; (3) point to the proof from which it could be concluded that Whitmer's allegations were sanctionable; and (4) specify the fees/expenses incurred. Whitmer further argues that the allegations which the Munsons' claimed were untrue, and thus sanctionable, either were not found by the trial court to have been untrue or a dispute existed relative to their truthfulness.

■ It is well settled that "[a] motion for sanctions must meet minimum requirements of specificity so that a responding party has an opportunity to challenge and defend against the allegations made and so that fees and costs may be fairly apportioned." *Cmarko v.*

*Fisher*, 208 Ill. App. 3d 440, 445, 567 N.E.2d 352, 354 (1990). Furthermore, with respect to apportionment of fees, the sanctions motion must specifically allege which statements were false and what fees were incurred as a result of those false statements. *Heritage Pullman Bank & Trust Co. v. Carr*, 283 Ill. App. 3d 472, 477, 670 N.E.2d 814, 817 (1996).

■ As outlined above, the sanctions motion filed by the Munsons set forth, with specificity, the allegations in Whitmer's complaints and the affirmative defenses advanced by Whitmer that the Munsons believed were untrue. In addition, the motion set forth facts established during the course of the litigation which tended to prove that the statements complained of were untrue. Specifically, in bulleted paragraphs, the Munsons pled the specific dates and pleadings in which Whitmer alleged that he had permits when the facts demonstrated that he did not apply for permits until after the construction was halted; that he relied upon his contractor and engineer to get the permits even though they were not aware that permits were required by the restrictive covenants; and that he tendered a document from a neighbor stating that the neighbor did not object to the boat hoist even though it violated the restrictive covenants after Whitmer claimed he was unaware of the covenant violation. The Munsons' motion also set forth allegations related to the affirmative defenses advanced by Whitmer and the reasons the Munsons believed the affirmative defenses were baseless. The motion further outlined the various motions and pleadings the Munsons filed to defend against Whitmer's claims, as well as the steps they took to have Whitmer's construction enjoined, and also stated the amount of attorney fees and costs that were incurred as a result of the litigation. Thus, we conclude that the Munsons' motion for sanctions sufficiently set forth the statements that were falsely made and the fees incurred therefrom such that Whitmer was given ample opportunity to defend against the claims. See *Cmarko*, 208 Ill. App. 3d at 445, 567 N.E.2d at 354 (where sanctions motion was held to have alleged "ample facts" to allow a defense against the allegations charged). Accordingly, we reject Whitmer's claims in this regard.

Having addressed Whitmer's procedural challenges to the instant claims for relief, we now address the Munsons' claim that the trial court failed to apply an objective standard in evaluating their motion for sanctions and further failed to consider Whitmer's "baseless" allegations.

■ Pursuant to Rule 137, the trial court may impose sanctions against a party or his counsel for filing a motion or pleading that is not well grounded in fact, not supported by existing law, or lacks a

good-faith basis for modification, reversal, or extension of the law, or is interposed for any improper purpose. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 6-7, 729 N.E.2d 75, 79 (2000). As the *Peterson* court explained, "[t]he purpose of Rule 137 is to prevent the filing of frivolous and false lawsuits." *Peterson*, 313 Ill. App. 3d at 7, 729 N.E.2d at 79. Yet, "the rule is not intended to penalize litigants and their attorneys merely because they were zealous, yet unsuccessful." *Peterson*, 313 Ill. App. 3d at 7, 729 N.E.2d at 79. Because the rule is penal in nature, it must be strictly construed. *Peterson*, 313 Ill. App. 3d at 7, 729 N.E.2d at 79.

■ The rule clearly provides that the signature of a litigant on a pleading constitutes a certification that the signing party read the pleading and made "reasonable inquiry" into the facts alleged. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590, 670 N.E.2d 328, 330 (1996). Courts are instructed to use an objective standard in evaluating what was reasonable under the circumstances as they existed at the time of filing. *Baker v. Daniel S. Berger, Ltd.* 323 Ill. App. 3d 956, 963, 753 N.E.2d 463, 469 (2001). It is not sufficient that the signing party " 'honestly believed' his or her case was well grounded in fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75, 651 N.E.2d 601, 607 (1995).

■ When called upon to determine whether sanctions were appropriate in a given case, we employ an abuse of discretion standard of review. *Baker*, 323 Ill. App. 3d at 963, 753 N.E.2d at 469. A trial court abuses its discretion when no reasonable person could take the view it adopted. *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244, 732 N.E.2d 1129, 1134 (2000). "When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc.*, 315 Ill. App. 3d at 244, 732 N.E.2d at 1134.

In this case, the record demonstrates that Whitmer filed a verified complaint against the Munsons that contained allegations which, upon making reasonable inquiry, Whitmer should have known were untrue and which, in all likelihood, he knew to be untrue. Specifically, Whitmer alleged in his "Verified Complaint" and in his "Amended Verified Complaint" that he obtained permits for reconstructing a retaining wall and building a new boat hoist on his property, that the permit applications "specifically outlin[ed] the work to be done" and that "the permit and supplemental drawings were made available for public notice." However, the evidence in this case demonstrated that Whit-

mer had not even applied for permits relating to the boat hoist when the complaint was filed and that he specifically told his contractors not to include the boat hoist in the plans detailing the project. Whitmer continued to assert that he possessed the requisite permits in his "Verified Answer to Motion for Preliminary Injunction," where he denied that he did not have the requisite permits, and in the same document, indicated that he was currently seeking permits from the requisite government agencies to continue work on the boat hoist.

After being continually challenged regarding his representation that he did not possess the requisite permits, Whitmer changed his facts alleging in his response to the Munsons' amended counterclaim that he obtained permits "that his architect and engineer advised him were necessary." However, as found by the trial court, the facts show that this allegation was untrue, given that the contractors were never made aware of the restrictive covenants and knew nothing about the permit requirements.

In addition, Whitmer alleged in his verified complaint and amended verified complaint that "[a]ll of the work contemplated in the project and allowed by the permits was specifically authorized in the Reservations and Restrictive covenants associated with the property owned by Whitmer and LESTER and JUDY MUNSON." Whitmer continued to assert that the boat hoist did not violate the restrictive covenants in his response to the Munsons' amended countercomplaint. However, the record amply demonstrates, and Whitmer himself virtually conceded by withdrawing his opposition to the permanent injunction, that construction of the boat hoist violated the original covenants insofar as the hoist did not comport with the drawings added to the covenants as a guideline depicting the type of hoist allowed. Further, the evidence demonstrates that Whitmer prepared a document for signature by a River Cottage neighbor which indicated that the neighbor was aware that the boat hoist violated the restrictive covenants. As the author of that document, Whitmer too was aware that his construction project violated the covenants.

In addition, as the trial court found, it is highly unlikely that Whitmer was not aware of these violations, even when filing his original complaint, because, as a "boating enthusiast" and the person who requested that the specifications for the hoist be added to the restrictive covenants, he was familiar with the type of hoist he was allowed to build. The fact that he omitted the boat hoist from his construction plans also indicates that he knew the hoist did not comply with the covenants.

Further, the construction project initiated by Whitmer likewise violated the 1989 Amendment insofar as Whitmer failed to obtain the

consent of the committee (his neighbors) before commencing construction. Whitmer attempted to explain this misrepresentation by claiming in his response to the Munsons' amended counterclaim that he was unaware of the amendment. Whitmer maintained that he did not receive notice of the amendment even though it was undisputed that notice of the amendment was sent to him on four separate occasions. Moreover, the trial court confirmed in its finding that Whitmer received notice of the amendment, that it was unlikely he did not know of its existence and that he was bound by the amendment's provisions. As discussed above, the court was fully cognizant of each false contention contained in Whitmer's pleadings and of the strong likelihood that Whitmer was fully aware of their falsity at the time the pleadings were filed. As previously demonstrated, the court recognized that it would be irrational to conclude otherwise.

Despite this evidence demonstrating that Whitmer knew or, upon reasonable inquiry, would have known that the material allegations of fact which he pled were false, the trial court nevertheless determined that Rule 137 sanctions were inappropriate in this case. The court purported to base its decision on several factors, including: (1) the fact that Whitmer became the defendant in the case after the Munsons counterclaimed and Whitmer withdrew his complaint against them; (2) the court's belief that the Munsons were asking that Whitmer be "punished"; (3) the court's fear of becoming "a tool of vengeance" on behalf of the Munsons; (4) the court's belief that Whitmer did not file suit to "harass" the Munsons, but was motivated by his desire to "avail himself" of his riverfront residence; and (5) the fact that Whitmer lived in the River Cottages first.

■ While we understand the trial court's reluctance to employ Rule 137 as a punishment against an unsuccessful litigant, we find that the court's reluctance was misplaced in the case at bar. As previously noted, the purpose of Rule 137 is to avoid frivolous and false lawsuits, and courts are called upon to use an objective standard in evaluating what was reasonable at the time of filing. See *Baker*, 323 Ill. App. 3d at 963, 753 N.E.2d at 469. We have held that, even where the initiating party " 'honestly believed' his or her case was well grounded in fact or law," it is still unreasonable to file the suit if its falsity could have been uncovered through reasonable inquiry. *Fremarek*, 272 Ill. App. 3d at 1074-75, 651 N.E.2d at 601. In this case, Whitmer initiated a lawsuit based on facts that he had to have known were false. If it could be unreasonable to file a suit based on an "honest belief," then it certainly would be unreasonable to file a suit with proven knowledge that the allegations pled are false. Litigants may not deploy the use of legal process frivolously or falsely as a weapon in a feud between neighbors or otherwise.

The facts showing that Whitmer owned his cottage first, that he was anxious to avail himself of the benefits of the property or that he eventually became the defendant in the case do not alter the unreasonableness or frivolousness of his actions, nor do they warrant this court turning a blind eye to the fact that Whitmer filed a complaint that clearly set forth a fraudulent, false or misleading version of the truth. Accordingly, we find that the trial court abused its discretion in relying on these factors to deny the Munsons' motion for sanctions and that a reasonable person, relying on the language and guidance of Rule 137, could not have reached the court's conclusion. In reaching this finding, we need not address the Munsons' further contention that sanctions are appropriate by reason of the affirmative defenses filed in Whitmer's verified answer and amended verified answer to the Munsons' motion for preliminary injunction.

## CONCLUSION

For the reasons set forth above, we reverse the trial court's denial of the Munsons' motion for sanctions and remand the cause to the trial court for a determination as to the proper amount of sanctions.

Reversed and remanded.

COUSINS and COHEN, JJ., concur.