# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2096

IFC CREDIT CORPORATION,

*Plaintiff-Appellant*,

v.

BULK PETROLEUM CORPORATION
and DARSHAN S. DHALIWAL,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-1015—**Aaron E. Goodstein**, *Magistrate Judge.*

———————

ARGUED JANUARY 10, 2005—DECIDED APRIL 8, 2005

———————

Before CUDAHY, KANNE and EVANS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Plaintiff IFC Credit Corporation (IFC) brought suit alleging that Bulk Petroleum Corporation (Bulk) and its CEO, Darshan Dhaliwal, breached a lease agreement under which Bulk leased gasoline tanks and other equipment from IFC with an option to purchase

them at the end of the lease. Bulk claims that the lease agreement has been concluded through an accord and satisfaction executed with the assignee of IFC's rights under the lease. The district court, through Magistrate Judge Aaron E. Goodstein, granted Bulk's motion for summary judgment, ruling that a valid accord and satisfaction had taken place. IFC now appeals that ruling, and we affirm.

## I.   FACTUAL BACKGROUND AND DISPOSITION BELOW

On or about June 21, 1995, Bulk and IFC entered into a series of agreements by which Bulk leased gasoline tanks and equipment from IFC to be used at various gas stations operated by Bulk. Under the terms of the agreements, Bulk was given an option to purchase the equipment at the end of the 72-month lease term. The purchase price was to be the greater of the fair market value of the equipment and $31,419.40, together with all applicable taxes. The lease documents also provided for extension of the lease term at a rate of $2,820.52 per month. The documents further required that any notices regarding the purchase of the equipment were to be sent to IFC at a designated address. Concurrent with the execution of the lease, Bulk's CEO, Darshan Dhaliwal, executed a personal guaranty of the agreements.

Less than two weeks later, on or about June 30, 1995, the Bulk lease was assigned by IFC to Finova Capital Corporation (Finova), giving Finova full right, title and interest in the lease, including the initial scheduled payments under the lease. Bulk's payments were to be sent to a Finova lockbox.

Beginning in November 2000, IFC's Patrick Witowski and Bulk's John Gerth engaged in negotiations concerning the termination of the lease and purchase of the equipment by Bulk. However, the two parties could not agree on a

purchase price. On January 23, 2001, while these negotiations were ongoing, Finova notified Bulk in writing that all further negotiations regarding the purchase option were to be conducted with IFC (and with Witowski specifically). Finova then promptly filed for bankruptcy on March 7, 2001.

On June 18, 2001, Dhaliwal, who to that point had apparently not been involved in negotiations, sent a letter to Finova and a check for $31,419.40, made out to Finova Capital Corporation. The invoice attached to the check read "pay off lease 5613500," and the endorsement area on the back of the check stated "payment in full of lease and purchase option # 5613500." (Plaintiff-Appellant Sep. Appx. at 43A-44A.) The accompanying letter from Dhaliwal stated that the check represented "payment in full of the lease and the purchase option" and that "[a]cceptance of this check represents full satisfaction of the obligation of Bulk Petroleum to Finova Capital Corporation." *Id.* at 42A. The letter concluded by stating that if Finova did not accept the check, then it should inform Bulk as to where it should ship the leased equipment back to Finova. *Id.*

The parties dispute the exact date upon which IFC, via Witowski, received a copy of Dhaliwal's letter. They also dispute whether the letter and the check were sent together or separately,[1] and whether the check was sent to Finova's "automated lockbox" rather than to its office (though the letter does not appear to have been sent to a P.O. Box address). In any event, it is undisputed that Witowski (and hence IFC) received a copy of the letter and the check via fax from Bulk on June 22, 2001. (*See* Witowski Aff. at ¶ 11, Plaintiff Appellant Sep. Appx. at 58A.) The check was negotiated three days later by Finova on June 25, 2001. Follow-

---

[1]  IFC's contention that they were sent separately is waived in any event. *See* discussion, *infra.*

ing negotiation of the check, IFC did not return the tendered money or claim that Finova had negotiated the check in error. Instead, IFC retained the tendered money, claiming that it constituted only partial satisfaction of Bulk's outstanding obligations under the agreement (which IFC reckoned to be in excess of $200,000). Bulk refused to make further payments, contending that its contractual obligations under the lease had been fulfilled upon acceptance and negotiation of the $31,419.40 check to Finova.

IFC filed this action on December 15, 2002, seeking to recover $207,961.88 (plus holdover rent) that it claims is owed by Bulk due to the breach of the lease agreement. IFC also sued Dahliwal based upon the personal guaranty he executed contemporaneously with the lease. On October 22, 2003, Bulk and Dahliwal filed a motion for summary judgment, contending that IFC's claim was barred by a valid accord and satisfaction. The district court granted Bulk and Dahliwal's motion, ruling that there was no remaining question of fact that defendants had met all the requirements of an accord and satisfaction under the relevant Uniform Commercial Code (UCC) provisions and Illinois law, and there was no evidence that the check was tendered in bad faith. (4/5/2004 Order.) IFC's appeal now comes before this Court. Since Bulk's tender met all the requirements of a valid accord and satisfaction, and above all since IFC did not return the tendered money or attempt to "undo" the transaction, we affirm.

## II. JURISDICTION

The district court had diversity jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a). IFC is an Illinois corporation with its principal place of business in Illinois. Bulk Petroleum is a Delaware corporation with it principal place of business in Wisconsin. The amount in controversy in this suit is in excess of $75,000 (specifically, $207,961.98 plus

holdover rent). Both parties consented in writing to the jurisdiction of the magistrate judge. The district court granted Bulk Petroleum's motion for summary judgment in an order resolving all claims on April 5, 2004. (4/5/2004 Order.) IFC timely filed its notice of appeal on April 23, 2004. Accordingly, we now have jurisdiction pursuant to 28 U.S.C. § 1291, which provides for appellate review of final orders issued by the district courts.

## III. DISCUSSION

In proceedings below, the district court granted Bulk's motion for summary judgment on the ground that a valid accord and satisfaction had occurred. We review rulings on motions for summary judgment *de novo*. *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003). Summary judgment is warranted when the evidence, when viewed in a light most favorable to the non-moving party, presents "no genuine issue as to any material fact" such that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Under both Illinois law and the relevant provisions of the UCC,[2] an accord and satisfaction occurs when the "person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was

---

[2] Ordinarily, a diversity action such as this would raise choice of law questions. However, in this case both parties agree that the governing legal standards are identical—Bulk cites to the relevant UCC provisions (U.C.C. § 3-311 (2002)), and IFC cites to Illinois law (810 Ill. Comp. Stat. 5/3-311), which formally adopts the UCC provisions. For the sake of simplicity, this opinion will cite to the Illinois code sections and to case law applying Illinois law, although both the Illinois and UCC provisions lead to the same result.

unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument." 810 Ill. Comp. Stat. 5/3-311(a) (2004). *Accord Saichek v. Lupa*, 787 N.E.2d 827, 832, 204 Ill. 2d 127, 135 (Ill. 2003) ("An accord and satisfaction is a contractual method of discharging a debt or claim. To constitute an accord and satisfaction there must be: (1) a bona fide dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement."). Additionally, 810 Ill. Comp. Stat. 5/3-311(b) requires that "the instrument or an accompanying written communication contain[ ] a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."

Clearly Bulk's tendered check and accompanying letter facially meet these criteria. The purchase price of the tanks was subject to a "bona fide dispute" (the parties could not agree on a price), the instrument and accompanying letter sent by Bulk contained highly "conspicuous statement[s]" that the check was tendered as full satisfaction of all obligations under the lease and purchase agreement, and Finova "obtained payment of the instrument" by negotiating the check on June 25, 2001. So far so good.

Paragraph (c) of section 5/3-311 adds a slight twist. It provides for an exception to these basic requirements which is designed to avoid inadvertent satisfaction of debts when a tender is sent to a large company. Under section (c), an otherwise valid tender to a claimant "organization" fails if "(i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a *designated person, office, or place*, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place." 810 Ill. Comp. Stat. 5/3-311(c) (emphasis added). This exception does not apply, however, if "within

a *reasonable time before collection of the instrument* was in-itiated, the claimant or an agent of the claimant having direct responsibility with respect to the disputed obligation knew that the instrument was tendered in full satisfaction of the claim." 810 Ill. Comp. Stat. 5/3-311(d) (emphasis added).

In the present case, assuming that IFC and Finova qualify as "organizations" so as to trigger the provisions of paragraph (c), Witowski was the acknowledged "designated person" responsible for conducting communications regarding the lease/purchase agreement, and Bulk sent the disputed check to Finova rather than to IFC or Witowski directly. Had no further communications taken place, this circumstance could have thwarted any attempted accord and satisfaction under section 5/3-311(c). However, it is undisputed that Witowski eventually received notice of Bulk's tender no later than June 22, 2001—three days before the check was cashed by Finova. The transaction here thus falls squarely within the provisions of section 5/3-311(d): regardless of any initial misdirection in making the tender, notice was given to the correct party within a reasonable time before col-lection of the instrument. The special exception contained in paragraph (c) does not apply, and Finova's negotiation of the check presumptively suffices to conclude a valid accord and satisfaction.

IFC objects that there is a material question of fact as to whether Bulk tendered its check in good faith. The UCC comment provides that "good faith" implies "not only honesty in fact, but the observance of reasonable commercial stand-ards of fair dealing. The meaning of 'fair dealing' will depend upon the facts in the particular case." U.C.C. § 3-311, cmt. ¶ 4 (2002). *See also Fremarek v. John Hancock Mut. Life Ins.*, 651 N.E.2d 601, 605, 272 Ill. App. 3d 1067, 1072 (Ill. App. Ct. 1995) (same). Here, IFC alleges that Bulk's fail-ure to send the check directly to Witowski and its mailing of the check and explanatory letter separately, taken to-

gether, indicate that Bulk was surreptitiously attempting to induce IFC into an inadvertent accord and satisfaction. On this score we note first that the parties hotly contest whether the letter and check were sent separately or together, and in any case IFC has waived this particular argument since it did not advance it below. *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004) ("'We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions.'") (quoting *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996)). *See also Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 603-04 (7th Cir. 1989); *Liberales v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983).

Moreover, IFC's allegations, even if credited, are probably not sufficient to obviate the tender in any event. Ordinarily the good faith requirement is violated where there is no bona fide mutual dispute concerning consideration, or the party tendering the payment affirmatively misleads the claimant. *See McMahon Food Corp. v. Burger Dairy Co.*, 103 F.3d 1307, 1313 (7th Cir. 1996) (holding there was no good faith where debtor induces acceptance of payment by falsely leading creditor's agent to believe that creditor agreed to the terms of the payment). Here, by contrast, IFC alleges no misrepresentation or proactive deception, but merely that Bulk initially sent the check to the wrong party. Additionally, Bulk quickly notified Witowski of the tender verbally and via fax thereafter.

But in any event, IFC continues to retain the money sent to it by Bulk. This bare fact trumps any concerns we might have about the procedural specifics of the transaction itself. On the basis of this consideration alone IFC's claims must fail. Illinois courts have long held that, where there is a bona fide dispute as to the amount due, retention of a tender conspicuously identified as an accord and satisfaction effectively dooms a claimant's case. *See In re*

*Cunningham's Estate*, 142 N.E. 740, 742, 311 Ill. 311, 315-16 (Ill. 1924); *Bankers Leasing Association, Inc. v. Pranno*, 681 N.E.2d 28, 34, 288 Ill. App. 3d 255, 264 (Ill. App. Ct. 1997); *Quaintance Assoc., Inc. v. PLM, Inc.*, 420 N.E.2d 567, 569-70, 95 Ill. App. 3d 818, 821-22 (Ill. App. Ct. 1981). An Illinois appellate court has recently applied this principle to a case analogous to the one at bar. In *Bankers Leasing Association, Inc. v. Pranno*, the debtor sent the creditor a check conspicuously marked as being in full satisfaction of all outstanding debts and accompanied by a letter to the same effect. The creditor, with full knowledge of the dispute as to the amount of the debt, promptly cashed the check and, just as IFC/Finova has done in this case, attempted to characterize the transaction as only partial satisfaction of outstanding debts. The court rejected this argument, however, holding that a valid accord and satisfaction had occurred:

> When Pranno [the creditor] cashed the check, however, he knew there was a dispute. He knew the parties did not agree on what amount Bankers owed him . . . . Pranno may have tried to hedge what he was agreeing to by stating in an affidavit that the check satisfied only part of the dispute, but "If there is a bona fide dispute as to the amount due, it makes no difference that the creditor protests that he does not accept the amount in full satisfaction. The creditor must either accept the payment with the condition or refuse." *Nelson v. Fire Insurance Exchange*, 156 Ill.App.3d 1017, 1020, 109 Ill.Dec. 516, 510 N.E.2d 137 (1987).

> Both the check and letter Bankers sent Pranno clearly indicated that by cashing the check, Pranno agreed that all claims between Bankers and Pranno would be satisfied. If Pranno did not agree to these terms, he should not have cashed the check.

*Pranno*, 681 N.E.2d at 34. IFC attempts to distinguish *Pranno* by pointing out that there the tendered check and the explanatory letter arrived together, while in this case they were (allegedly) sent separately. Once again, IFC has

waived any argument to this effect, and in any case such a minor factual quibble is irrelevant to the principle articulated here. The recipient of a conspicuously-marked tender proposing an accord and satisfaction may not keep the tender and simultaneously contend that no accord and satisfaction occurred.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM the district court's grant of summary judgment in favor of defendants Bulk Petroleum and Darshan Dhaliwal.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*