794 N.E.2d 397 (2003)
341 Ill. App.3d 887
276 Ill.Dec. 502
In re STEPHANIE P. and Janie I., Minors
The People of the State of Illinois, Petitioner-Appellee,
v.
Lisa I., Respondent-Appellant.
No. 3-01-1043.
Appellate Court of Illinois, Third District.
June 27, 2003.
*398 Paul T. Donahue (Court-appointed), Joliet, for Lisa M.D.
John X. Breslin, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Jeff Tomczak, Will County State's Attorney, Joliet, Richard T. Leonard, State's Attorneys Appellate Prosecutor, Ottawa, for the People.
Shawn N. Heffernan, Codo, Bonds, Zumstein & Konzelman, P.C., Joliet, for Alfredo Ibarra.
J. Kevin Davis (Court-appointed), Guardian Ad Litem, Joliet, for Janie I. Stephanie P.
Justice BARRY delivered the Opinion of the court:
The trial court found that the respondent mother, Lisa I., was neglecting her children, Stephanie P. and Janie I., because of an injurious environment. The court initially placed the children under the guardianship of the Department of Children and Family Services (DCFS). Later, the court allowed DCFS to terminate its guardianship and gave custody of the children to their respective fathers. On appeal, the respondent argues that the trial court (1) erred by terminating DCFS' guardianship without first conducting an investigation into the fathers' criminal backgrounds; and (2) abused its discretion by allowing DCFS to terminate its guardianship over the children. We affirm.

BACKGROUND
On March 17, 2000, the State petitioned the trial court to find that the respondent's children were neglected because of an injurious environment. The court determined that there was probable cause, made the children wards of the court, and gave temporary custody and guardianship of the children to DCFS.
The court conducted adjudicatory hearings from January 29 through May 1, 2001. An investigator for DCFS testified that on February 29, 2000, the respondent had offered cocaine to the children's 15-year-old babysitter after the babysitter asked to be paid. The babysitter initially refused the cocaine. The respondent then threatened to tell the babysitter's friends that she "was a drug addict and say things about her" if she did not ingest the cocaine. After the babysitter ingested the cocaine, the respondent called 9-1-1 and said that the babysitter had stopped breathing. In fact, the babysitter had not stopped breathing, but had choked because her nose was bleeding. The DCFS investigator testified that the respondent participated in other drug activities in the home in the presence of the children.
On May 1, 2001, the court issued its written adjudication order finding that the children were neglected because of an injurious environment. In its factual basis for the finding of neglect, the court noted the cocaine ingestion by the babysitter. The *399 court ordered guardianship and custody of the children to temporarily remain with DCFS pending the final disposition of the cause.
Catholic Charities (CC) filed a dispositional report on June 19, 2001, concerning the children. Regarding Janie I., the report noted that her father, Alfredo I., had initiated divorce proceedings against the respondent. Alfredo I. had received outpatient drug treatment for marijuana use and had completed parenting classes. CC recommended that DCFS retain custody of Janie I., but with a transition toward giving custody to Alfredo I.
The record indicates that Stephanie P.'s father, Robert P., was arrested for cocaine possession in September 2000. CC's report indicated that Robert P. was attending Narcotics Anonymous and Alcoholics Anonymous meetings on a regular basis to maintain his sobriety. He had successfully completed drug treatment and counseling. CC recommended that Robert P. be given custody of Stephanie P., with guardianship to remain with DCFS for six months. The court's written order followed CC's recommendations concerning the children, their fathers, and DCFS.
On September 4, 2001, CC submitted another report to the court. The report stated that since the previous report, DCFS had given custody of Janie I. to Alfredo I. CC recommended that custody of both children remain with their respective fathers, but that guardianship remain with DCFS for three months. The report stated that the respondent informed the CC worker that she had been arrested for possession of a controlled substance on July 26, 2001.
The trial court's written order of September 4, 2001, continued the matter for a permanency hearing on December 18, 2001. On the date of the permanency hearing, DCFS filed petitions to be discharged from its guardianship of Stephanie P. and Janie I. The court's docket sheet indicates that the court held a hearing on December 18, 2001, in which all of the parties were present. The docket sheet states, "Custody to fathers. Orders of discharge entered."
The appellant has supplied transcripts of numerous hearings in this case, but has not supplied a transcript or other record of the December 18, 2001, hearing. The record includes the court's written orders of December 18, 2001, in which the court (1) granted DCFS' petitions for discharge from its guardianship of the children; and (2) terminated the court's wardship of the children. The respondent appealed.

ANALYSIS

I. Investigation into Criminal Backgrounds
The respondent argues that the court erred by terminating DCFS' guardianship over her children without first conducting an investigation into their fathers' criminal backgrounds.
When the trial court terminates a previously ordered guardianship, the termination must comply with section 2-28 of the Juvenile Court Act of 1987(Act) (705 ILCS 405/1-1 et seq. (West 2000)). 705 ILCS 405/2-31(2) (West 2000). Section 2-28(1) of the Act states that if the court previously found that a child's neglect was the result of the acts, omissions, or both the acts and omissions of a parent, the court is to conduct an investigation as provided for in section 2-28(5) concerning the fitness of that parent to care for the child. 705 ILCS 405/2-28(1) (West 2000). According to section 2-28(5) of the Act,
"Whenever * * * the minor was adjudicated neglected, abused, or dependent as a result of physical abuse, the court shall cause to be made an investigation *400 as to whether [the parent seeking restoration of custody] has ever been charged with or convicted of any criminal offense which would indicate the likelihood of any further physical abuse to the minor." 705 ILCS 405/2-28(5) (West 2000).
In this case, DCFS petitioned to terminate its guardianship over the children. According to section 2-31(2), the trial court could not terminate DCFS' guardianship without complying with section 2-28. The respondent contends that section 2-28(1) required the trial court to conduct an investigation into the fathers' criminal backgrounds under section 2-28(5) before terminating DCFS' guardianship.
The primary rule of statutory construction is to give effect to the legislature's intent by first looking to the plain language of a statute and giving that language its ordinary meaning. Where the language of a statute is clear and unambiguous, a court of review must give it effect as written, without reading exceptions, limitations, or conditions into the statute. Because interpretation of a statute is a question of law, our review of this issue is de novo. Swank v. Department of Revenue, 336 Ill.App.3d 851, 271 Ill.Dec. 553, 785 N.E.2d 204 (2003).
Here, the plain language of section 2-28(5) only requires an investigation into a parent's criminal background where the court previously found that a child was neglected as a result of physical abuse. The children in this case were not found to be neglected because of physical abuse, and therefore the requirements of section 2-28(5) would not appear to apply. The respondent, however, focuses on the language of section 2-28(1). According to the respondent, section 2-28(1) requires an investigation under section 2-28(5) whenever the court found that a child was neglected "due to the acts or omissions or both of [a] parent." 705 ILCS 405/2-28(1) (West 2000).
First, the respondent has taken language from section 2-28(1) out of context. Section 2-28(1) states that the court shall not restore custody to a parent, without an investigation under section 2-28(5), where the court previously found the child to be neglected "due to the acts or omissions or both of such parent." 705 ILCS 405/2-28(1) (West 2000). The record in this case does not indicate that the children were found to be neglected at all, much less because of acts or omissions, as to the respective fathers who were seeking restoration of custody.
Second, the respondent asks us to read an exception into section 2-28(5) because of the language in section 2-28(1). However, we will not read into the language of section 2-28(5) an exception that is not indicated by the plain language of that statute. See Swank, 336 Ill.App.3d 851, 271 Ill.Dec. 553, 785 N.E.2d 204. The plain language of section 2-28(5) does not indicate such an exception here. Therefore, we rule as a matter of law that the trial court did not err by terminating DCFS' guardianship over the respondent's children without first conducting an investigation under section 2-28(5).

II. Termination of DCFS' Guardianship
The respondent contends that the court abused its discretion by allowing DCFS to terminate its guardianship over her children.
It is the appellant's burden to present a sufficiently complete record of the trial court proceedings to support a claim of error. In the absence of such a record, a court of review will presume that a trial court's order was in conformity with the law and had a sufficient factual basis. Any doubts arising from the incompleteness of the record will be resolved against *401 the appellant. Whitmer v. Munson, 335 Ill.App.3d 501, 269 Ill.Dec. 821, 781 N.E.2d 618 (2002).
In the instant case, a docket sheet entry indicates that the trial court held a hearing on December 18, 2001. During that hearing, the court granted DCFS' petitions to be discharged as guardian over the respondent's children. The respondent has not supplied this court with a transcript or other record of that hearing. As a consequence, we presume that the trial court's order terminating DCFS' guardianship had a sufficient factual basis and followed the law. Because the respondent failed to provide us with a sufficient record, we resolve this issue against her.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the Will County circuit court.
Affirmed.
LYTTON, J. and McDADE, P.J., concurring.