FRANK STERDJEVICH *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellees and Cross-Appellants, v. RMK MANAGEMENT CORPORATION *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division)   No. 1—00—3952

Opinion filed September 8, 2003.

Robert J. Zaideman, of Zaideman & Esrig, P.C., of Chicago, for appellants.

Jeffrey M. Friedman and Brian R. Holman, both of Friedman & Holman, of Chicago, for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

The instant suit arises from a dispute between plaintiffs Frank Sterdjevich (Sterdjevich) and Tracy Green (Green) and defendants NHP Management Corporation (NHP) and Rescorp Realty, Inc. (Rescorp), stemming from gas utility charges that defendants allegedly billed to plaintiffs in violation of the Tenant Utility Payment Disclosure Act (Act) (765 ILCS 740/1 *et seq.* (West 1996)) and in breach of their respective lease agreements. On appeal, defendants NHP and Rescorp contend that the trial court erred in denying their motions

for sanctions against plaintiff Sterdjevich, who, they assert, knowingly made false material allegations in his pleadings. NHP, alone, further asserts that the trial court erred in denying its motions for attorney fees and other expenses incurred during litigation of the instant case to which it would have been entitled under the express provisions of the operative lease. In his cross-appeal, plaintiff Sterdjevich alleges that the trial court erred in granting NHP's motion for summary judgment with respect to his second amended complaint. For the reasons that follow, we affirm the trial court's judgment with respect to summary judgment and the denial of attorney fees and other litigation expenses, and reverse with respect to sanctions.

## BACKGROUND

In March 1995, plaintiffs Sterdjevich and Green filed a class-action[1] complaint on behalf of themselves and as representatives of the other tenants of the building located at 200 Arlington Place in Arlington Heights, Illinois (200 Arlington Place), against RMK Management Corporation (RMK) and Arplace Limited Partnership (Arplace).[2] The complaint alleged that RMK and Arplace breached their respective lease agreements, violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1996)) and violated the Act when they assessed a monthly gas utility charge to tenants at 200 Arlington Place without providing an assessment formula for master metered utilities. Thereafter, in March 1996, plaintiffs filed a first amended complaint wherein they named additional defendants, including Draper & Kramer, Incorporated (Draper & Kramer),[3] Rescorp and NHP. With respect to Rescorp and NHP, plaintiffs made the following allegations which are relevant to the instant appeal: (1) that defendants "breach[ed] lease agreements entered into with the tenants at 200 Arlington Place, by assessing tenants a monthly 'gas charge' in violation of the terms of the lease and in violation of Illinois law"; (2) that defendants committed deceptive practices by failing to disclose that tenants would be required to pay a monthly gas charge; and (3) that the leases executed between defendants and plaintiffs contained a provision which provided that tenants would be responsible only for payment of individually metered utility charges.

Prior to filing their first amended complaint, plaintiffs filed a motion stating the reasons why they sought leave to amend. In the motion, plaintiffs asserted that they deposed Kate Wojciechowski, the

---

[1]Although plaintiffs filed a class action complaint, the record demonstrates that class certification was denied by the trial court.

[2]RMK and Arplace are not parties to the instant appeal.

[3]Draper & Kramer is not a party to the instant appeal.

manager of 200 Arlington Place, and that she testified that Rescorp and NHP "engaged in the practice of charging tenants for Gas Charges despite explicit lease provisions and Illinois law prohibiting same." In support of this contention, plaintiffs attached to their motion an excerpt from Wojciechowski's deposition, wherein she stated that Rescorp and NHP constructed 200 Arlington Place and that Rescorp subsequently managed the building from 1987 until 1989. NHP then took over management duties until 1991. In the excerpted portion of the deposition, Wojciechowski further stated that she worked as an assistant manager for NHP, and testified that NHP used the same leases as those utilized by other managing companies in the building, which contained the following provision, hereinafter identified as Paragraph 7:

> "7. UTILITIES: Unless otherwise agreed in writing, if the Apartment is individually metered, payment to the utility company or authorized metering agency of the applicable charges for gas, electricity or water consumed by Tenant in the Apartment, including, if applicable, current use for electrical heating, ventilation, air conditioning, hot water, etc. shall be Tenant's sole responsibility."

She could not say whether Rescorp also used leases containing a provision similar to Paragraph 7. Wojciechowski averred that Draper & Kramer took over management of 200 Arlington Place in May 1992 and continued in that capacity until December 1992. She averred that Draper & Kramer included language in its lease such as that set forth in Paragraph 7. Although not included in the excerpted testimony provided by plaintiffs, Wojciechowski testified in her deposition that she executed a lease with Rescorp for a unit at 200 Arlington Place for the period of April 19, 1991, through May 31, 1992. Notably, nowhere in the deposition excerpt provided by plaintiffs did Wojciechowski state, as plaintiffs represented, that NHP and Rescorp charged tenants for gas utilities.

On May 26, 1996, defense counsel wrote a letter to plaintiffs' counsel regarding the allegations made in the first amended complaint. In the letter, defense counsel advised that the leases actually used by Rescorp and NHP were materially different from the leases used by the other management agencies, upon which plaintiffs' complaint was based. Defense counsel indicated that the NHP and Rescorp leases "spell out how that charge [utility charge] will be assessed." With the letter, defense counsel provided copies of the 1991 lease executed between Sterdjevich and NHP, as well as the form lease utilized by Rescorp for 200 Arlington Place. Finally, defense counsel advised plaintiffs that it would be filing a motion to dismiss the complaint in the event that plaintiffs decided to proceed with their suit in light of

the information provided and would also seek attorney fees because the pleading filed was "baseless." Plaintiffs chose to proceed, and on May 31, 1996, NHP and Rescorp filed a motion to dismiss the first amended complaint. In that motion, defendants contended that dismissal of plaintiffs' first amended complaint was warranted because plaintiffs failed to allege that they entered into a lease agreement with either of the defendants and failed to provide the written instrument upon which their claim was based.

On August 8, 1996, plaintiffs filed their "Response to Defendants Rescorp Reality, Inc. and NHP Management Company's Motion to Dismiss." In that response, plaintiffs asserted that they filed their first amended complaint "[b]ased on Wojciechowski's testimony in which she stated that NHP committed the same practices as the original defendants (RMK and Arplace) with respect to assessing gas charges, and that she did not know whether Rescorp committed such practices." Plaintiffs also argued that defendants' motion to dismiss did not raise adequate pleading defects because "the mere fact that the plaintiffs have not attached a copy of the leases which forms the basis of their allegations against defendant Rescorp and NHP is inconsequential since the leases are or were within the custody and control of the defendants." Plaintiffs went on to assert that "defendants NHP and Rescorp have not produced the leases which their agent admitted exist." Plaintiffs also reiterated that Wojciechowski's deposition supported the facts in their complaint because she stated that NHP entered into leases, which were similar to those of other management companies, "in which gas charges were assessed in violation of the terms of the lease, *** the Consumer Fraud Act, and *** [the Act]."

Defendants, in turn, filed a reply in support of their motion to dismiss wherein they reasserted that the first amended complaint was deficient because it did not allege that plaintiffs were involved in a landlord/tenant relationship with defendants and did not have, as an attachment, a copy of the leases upon which the complaint was based. Defendants also pointed out that copies of the subject leases were turned over to plaintiffs with defendants' May 26, 1996, letter, and in support, attached copies of the letter as well as the subject leases to their reply memorandum. On September 17, 1996, the trial court granted defendants' motion to dismiss and allowed plaintiffs 28 days to file an amended complaint.

On October 15, 1996, plaintiff Sterdjevich filed his second amended complaint, which did not include Rescorp as a defendant but did name NHP. Notably, the second amended complaint was brought by Sterd-

jevich only and eliminated Green as a putative class representative.[4] In count IV of the complaint, plaintiff alleged that he entered into a lease agreement with NHP on December 12, 1991, for a term commencing on January 5, 1992, and continuing through January 31, 1993. With respect to gas utility charges, the lease stated that gas utilities would be master metered for all apartments and that tenants would be charged monthly for their gas usage at a rate proportional to the charges incurred for the entire building based on a ratio between the space leased by the tenant and the total space in the building. Plaintiff alleged in the complaint that the lease did not provide a sufficient formula for the allocation of gas charges to tenants.[5] Plaintiff further alleged that NHP allocated a gas charge to him but did not provide a copy of the utility bill from which payment was demanded. In addition to including a copy of the lease in the second amended complaint, plaintiff also included a letter that he wrote on April 9, 1993, to Wojciechowski, the assistant property manager of the building. In the letter, plaintiff stated that he "recently" received notices advising him that a payment of $28.56 was past due on his rent obligation resulting from his failure to pay gas utility charges from December 15, 1992, to January 15, 1993.

NHP subsequently deposed Sterdjevich. In his deposition, Sterdjevich stated that when he leased the apartment at 200 Arlington Place in December 1991, it was his understanding that his heating, ventilation and air conditioning charges (HVAC) would be free for the first six months of the lease and that he would be required to pay for these utilities once the six-month period ended. Sterdjevich testified that he did not pay for HVAC utilities, which included gas, during the first six months of his lease, and that he continued to receive these utilities without being charged for nearly a full year, until February or March 1993, when he first received a billing statement for December 1992 through January 1993. Sterdjevich stated that he paid the gas charges assessed to him in order to retain his lease at 200 Arlington Place. Prior to making the payments for gas utilities, Sterdjevich indicated that his wife contacted Northern Illinois Gas, which provided gas services at 200 Arlington Place, and learned that there was only

---

[4]Thus, any references to plaintiff with respect to the issue of the trial court's grant of summary judgment on the second amended complaint refer to Sterdjevich only.

[5]We note here that defendant does not contend on appeal that the lease provided a sufficient disclosure of the formula as required by the Act. See 765 ILCS 740/5(a) (West 1996) ("[t]he formula shall include all those that use the public utility service and may reflect variations in apartment size or usage").

one master meter, rather than individual meters, for each apartment at the property. The master meter was registered to Draper & Kramer, and not NHP, at that time.

Sterdjevich also stated that he was aware that NHP ceased serving as the managing agent of the company prior to the expiration of his lease. In this regard, Sterdjevich acknowledged that he sent a letter to the managing agent of the building on November 30, 1992, three to four months before he received a demand for payment of utility charges, and the letter was addressed to Draper & Kramer. Sterdjevich stated that he did not receive any gas utility charges in his monthly statements between January 1992 and February 1993, and that NHP was replaced by Draper & Kramer sometime before November 30, 1992. Sterdjevich agreed that he had never been charged for gas utilities prior to November 1992. He also admitted that he had not suffered any damages as a result of any conduct by NHP regarding the collection or imposition of gas utility charges.

NHP next filed "Defendant NHP Management Company's Request to Admit Directed to Plaintiffs," wherein plaintiffs were asked to admit: (1) that plaintiff Green never entered into a lease with NHP; (2) that NHP never demanded payment for master metered utilities from plaintiff Green; (3) that plaintiff Sterdjevich entered into only one lease with NHP, a copy of which was attached; (4) that Sterdjevich wrote a letter to Wojciechowski on April 9, 1993, wherein he stated that he never received any prior gas bills during his tenancy at 200 Arlington Place; and (5) that NHP never made a demand upon Sterdjevich for payment of master metered utilities. Plaintiffs admitted statements one through four, but denied the final statement.

NHP subsequently filed a motion to dismiss asserting that the Act did not apply to the instant case because Sterdjevich's lease agreement was entered into prior to the effective date of the Act; that, in any event, NHP complied with the requirements set forth in the Act; and that Sterdjevich waived any objection relating to utilities when he signed his lease agreeing not to contest utility charges.

NHP also filed a motion for summary judgment asserting that a violation of the Act did not occur because no demand for payment of gas charges incurred by plaintiff Sterdjevich was ever made, and because Sterdjevich never paid NHP for utility charges. In support of its summary judgment motion, NHP presented the trial court with an affidavit signed and sworn to by Brenda Smaller, the property manager of 200 Arlington Place from November 1990 until April 1993. Smaller attested that NHP managed 200 Arlington Place when Sterdjevich signed his lease on December 12, 1991, but was replaced by Draper &

Kramer in May 1992.[6] Smaller stated that in a letter issued to her assistant property manager, Kate Wojciechowski,[7] Sterdjevich indicated that he had not been billed for gas charges before early 1993. Smaller pointed out that, at the time gas charges were assessed to Sterdjevich, NHP was no longer affiliated with the 200 Arlington Place property. Smaller further stated that NHP never demanded payment for gas utility charges from Sterdjevich and was likewise never paid for such charges. Attached to Smaller's affidavit was a letter she wrote to Sterdjevich on April 15, 1993, wherein she reminded Sterdjevich that he received one year of free heating and air conditioning in 1992, and thus demanded payment of $28.56 for two months worth of gas utility expenses. The letter reminded Sterdjevich that, according to his lease agreement with NHP, he was entitled to only six months of heating and air conditioning without charge, but due to an administrative error, he continued to receive heating and air conditioning without charge after the six-month period had elapsed.

There is some indication in the record that plaintiff responded to these motions; however, we are unable to locate his response in the record and it is not included in the record cites made by the parties. According to NHP's reply memorandum to plaintiff response, however, plaintiff asserted in his response, as he does herein, that NHP should be held liable for the conduct of other management companies acting during the term of NHP's lease with plaintiff, even if those acts occurred after NHP was replaced by its successor, Draper & Kramer.

After a hearing, the trial court granted defendants' motion to dismiss and motion for summary judgment. In doing so, the trial court reasoned that, although Sterdjevich alleged a violation of the Act in his second amended complaint, the Act "had no application to the lease agreement" between NHP and Sterdjevich because "[p]laintiff Sterdjevich and NHP entered into said lease to [sic] December 12, 1991. The [Act] did not go into effect until January 1, 1992." The trial court added that it was granting defendant's motion to dismiss and motion for summary judgment because plaintiff failed to allege, and the "uncontroverted evidence" showed, that NHP never demanded payment from plaintiff for master metered utility services and that plaintiff did not suffer any injury as a result of NHP's conduct.

Prior to the trial court granting summary judgment, NHP, joined by defendant Rescorp, filed a motion for sanctions against plaintiffs

---

[6]Smaller retained her position as property manager after Draper & Kramer took over management of the 200 Arlington Place property.

[7]Wojciechowski obtained a position as an assistant property manager after Draper & Kramer took over management of the 200 Arlington Place property.

asserting that plaintiffs knowingly made false allegations in their first and second amended complaints, as well as in other documents filed during the pendency of the suit. Specifically, defendants asserted that: (1) in their first amended complaint, plaintiffs alleged that defendants used a lease containing the provision previously identified as Paragraph 7, stating that tenants would be responsible for individually metered utilities only, which, in fact, was not used in NHP or Rescorp's leases; (2) plaintiffs did not withdraw the erroneous allegations in their complaint regarding the contents of defendants' leases even after they were presented with copies of NHP and Rescorp's leases which clearly demonstrated that the provision was not included; (3) plaintiffs pled that NHP and Rescorp charged them for utilities in violation of the terms of their leases when Green never entered into a lease with either company and Sterdjevich only entered into a lease with NHP; (4) plaintiff Sterdjevich denied the statement in defendants' request to admit stating that NHP never demanded payment from him for master metered utilities, even though he admitted in his deposition that he was never charged by NHP and suffered no damages as a result of NHP's conduct; (5) Sterdjevich admitted in his deposition that he was aware of the terms of his lease with NHP and knew that his lease required him to pay for utilities for 6 months of his 12-month lease, despite the fact that he originally pled that the utility provision in the lease was the same as that used by other management companies in the building; (6) plaintiff sought to recover damages in his second amended complaint against NHP for gas charges assessed against him, even though he admitted in his deposition that he suffered no damages from NHP's conduct; and (7) plaintiffs could have learned of these issues through reasonable inquiry.

The trial court initially granted defendants' motion for sanctions, stating:

> "This Court supports the Defendants' position that any reasonable inquiry on the part of the plaintiffs' counsel as required by Illinois Supreme Court Rule 137, would reveal that the Plaintiffs' initial allegations regarding the text of NHP and Rescorp's leases were false; that the Plaintiffs' initial allegations about having been misled and deceived by NHP and Rescorp were false, that neither NHP nor Rescorp ever made demand upon either Plaintiff for the payment of false charges, that neither Plaintiff ever paid for gas charges incurred while NHP or Rescorp was associated with the property, and that neither plaintiff suffered any damages as a result of any conduct by NHP or Rescorp. Plaintiffs not only failed to make such an inquiry, but ignored the documentary evidence

provided by counsel for NHP and answered their Request to Admit in a manner contrary to the testimony of their own client."

After making this ruling, the trial court granted defendants leave to file a motion for attorney fees and costs of litigation.

Plaintiffs subsequently filed a motion to vacate the sanctions order. In their motion, plaintiffs asserted that their right to due process was violated because the trial court imposed sanctions without giving them an opportunity to file a response to defendants' sanctions motion. Plaintiffs also filed a motion to reconsider the order granting sanctions, asserting that they filed their first amended complaint against Rescorp and NHP because Wojciechowski testified that Rescorp owned the property and NHP managed it through 1991. Sterdjevich testified in his original deposition that he entered into a lease on the property in 1991, and therefore, he believed Rescorp was affiliated with 200 Arlington Place during the term of his lease. Plaintiffs further asserted that they filed their second amended complaint against NHP only because they learned, after receiving a copy of Sterdjevich's lease with NHP, that Rescorp did not own the property, and therefore, they did not include Rescorp in the complaint. They likewise stated that review of NHP's lease showed a violation of the Act based on the fact that NHP did not set forth a formula for calculating monthly gas charges and did not disclose to tenants that the cost of gas consumed for hot water would be charged to them. Plaintiffs also pointed out that Sterdjevich was billed for gas charges incurred during the last month of his lease with NHP, and they asserted that there was no evidence demonstrating that NHP was not responsible for damages incurred during the term of its lease, especially where NHP did not inform Sterdjevich that it had assigned the lease to another entity.

After considering these motions, the trial court granted plaintiffs' motion for reconsideration and denied defendants' motion for sanctions. In doing so, the trial court stated:

"In reviewing all of these pleadings, in reviewing this case again, this Court feels that it made an error in leveling sanctions. I'm not going to penalize the lawyers that way or the plaintiff. A lawyer, when he looks at a deposition and extracts the testimony, thinks myopically, his side only. This Court erred in leveling sanctions; and in reconsidering it, I'm going to deny sanctions."

Prior to the trial court's reconsideration of its order granting sanctions, NHP filed its petition for attorney fees and expenses against plaintiff Sterdjevich. In that petition, defendant reasserted the claims set forth in its sanctions motion and provided documentation regarding attorney fees incurred during this litigation. Defendant then filed an amended petition, designated by NHP as an "Amended Petition for

Attorneys' Fees to be Awarded Against Plaintiff Frank Sterdjevich Pursuant to the Lease Between the Parties." The amended petition asserted that NHP was entitled to attorney fees under the express provisions of the lease. The petition alleged that NHP entered into a lease agreement with Sterdjevich in its capacity as the agent for the owner of the property, that it acted on behalf of the owner in entering into the lease, and that plaintiff is thus liable for expenses incurred by NHP, including "reasonable attorneys fees" and "out-of-pocket expenses." NHP argued that Sterdjevich was bound to pay these fees based on Paragraph 20(e) of the lease, which provides:

> "Tenant shall pay upon demand all Lessor's costs, charges and expenses, including the fees of counsel, agents and others retained by Lessor, incurred in enforcing Tenant's obligations hereunder or incurred by Lessor in any litigation, negotiations, or transactions in which Tenant causes Lessor, without Lessor's fault, to become involved or concerned."

At this point in the litigation, NHP sought attorney fees of $28,875.75 and costs of $2,038.98.

Sterdjevich moved to strike NHP's claim on the basis that NHP was the managing agent and not the lessor of the property, and therefore, the provision of the lease upon which its petition for fees relied did not apply. The trial court agreed and granted Sterdjevich's motion stating:

> "I have been privy to this case for a long, long, long time. Is NHP deducting the real estate taxes paid by Arlington, the owner, off of their income tax? The answer is no. They are not the lessor, they are the managing agents. And I have to agree that the plaintiff, this type of action was not contemplated. If NHP wants its fees tell them to talk to their employer."

NHP subsequently filed a motion to reconsider, asserting that it was the lessor because it entered into the lease agreement as the owner's agent, had the authority to enforce all of the provisions of the lease and was required to defend the litigation stemming from those lease provisions. The trial court rejected these arguments and denied NHP's motion.

On appeal, defendants NHP and Rescorp assert that the trial court erred in denying their motions for sanctions. NHP, individually, further asserts that the trial court erred in denying its motion for attorney fees and litigation expenses. On cross-appeal, plaintiff asserts that the trial court erred in granting summary judgment in favor of NHP. Because we need not consider the issues of sanctions and attorney fees in the event that summary judgment was erroneous, we first consider the claims raised in plaintiff's cross-appeal.

## ANALYSIS

### Summary Judgment

■ In his cross-appeal, Sterdjevich[8] asserts that the trial court erred in granting NHP's motion for summary judgment with respect to his second amended complaint because the uncontroverted facts show that NHP violated the Act in that a demand for payment for master metered public gas utilities was made upon plaintiff during the term of his lease with NHP, and plaintiff was never given a formula explaining how the charges were allocated. The Act provides:

"§ 5. Disclosure of utility payment included in rent.

(a) No landlord may demand payment for master metered public utility services pursuant to a lease provision providing for tenant payment of a proportionate share of public utility service without the landlord first providing the tenant with a copy in writing either as part of the lease or another written agreement of the formula used by the landlord for allocating the public utility payments among the tenants. *** The landlord shall also make available to the tenant upon request a copy of the pubic utility bill for any billing period for which payment is demanded. Nothing herein shall preclude a landlord from leasing property to a tenant, including the cost of utilities, for a rental which does not segregate or allocate the cost of the utilities." 765 ILCS 740/5(a) (West 1996).

Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment because: (1) the Act did apply to the lease between plaintiff and defendant; (2) demands for gas payments were made, and plaintiff paid for gas charges which were allegedly incurred during the term of plaintiff's lease initially entered into with NHP; and (3) NHP is liable for the contractual duties and liabilities contained within its lease with plaintiff, even if that lease was assigned to another company. Defendant counters that summary judgment was proper because the Act did not apply to plaintiff's lease with defendant and, even if the Act did apply, defendant neither demanded nor collected gas utility payments from plaintiff.

■ In considering the issues presented herein, we are mindful that summary judgment is appropriate when the pleadings, depositions, affidavits and admissions on file, viewed in the light most favorable to the nonmoving party, reveal that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349,

---

[8]As previously indicated, the second amended complaint that is the subject of this appeal was brought by Sterdjevich only. None of the allegations made in the complaint include plaintiff Green.

701 N.E.2d 493, 496 (1998). Summary judgment is a drastic remedy that is allowable only when the right of the moving party is clear and free from doubt, such that the material facts of the case are undisputed and the record presents only questions of law. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). A motion for summary judgment is reviewed *de novo*, and we may affirm the trial court's decision to grant summary judgment on any basis in the record. *Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 552, 732 N.E.2d 37, 46 (2000).

Plaintiff first asserts that the trial court erred in granting summary judgment on the ground that the Act did not apply to his lease agreement with NHP. The parties agree that plaintiff signed his lease on December 12, 1991, and that the Act did not become effective until January 1, 1992. However, plaintiff maintains that there is no evidence in the record indicating when NHP actually signed and accepted the lease, and that execution of the lease by one party on December 12, 1991, "neither implies nor demonstrates that a fully executed contract was entered into that day." Plaintiff also points out that possession of the apartment did not occur until January 5, 1992, but makes no argument, and cites no authority, that would explain the actual significance of the possession date with respect to his argument. NHP counters that the plain language apparent on the face of the lease clearly states that the "Date of Lease" is December 12, 1991.

■ Generally, a written contract or lease is not considered binding until it is executed by the parties involved. See *Interway, Inc. v. Alagna*, 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615, 618 (1980) (where the court stated that, if the parties to a contract construe the execution of a formal agreement as a condition precedent, then no contract arises until that formal agreement is executed by both parties); see also 51C C.J.S. *Landlord & Tenant* § 216 (1968) ("[o]rdinarily, there is no binding written contract of lease unless and until it is executed by the parties"). When construing the date upon which a legal instrument was executed, the date on the instrument is generally considered *prima facie* evidence of the date of execution. See 10 W. Jaeger, Williston on Contracts § 1137A (3d ed. 1967) ("[w]here the instrument or an acceptance or any indorsement thereon is dated, such date is deemed prima facie to be the true date of the making, drawing, acceptance, or indorsement as the case may be"); 51C C.J.S. *Landlord & Tenant* § 216 (1968) ("[t]he date on a lease is prima facie evidence of the date of execution"). Illinois law has long followed this principle with respect to legal instruments. See *Smiley v. Fries*, 104 Ill. 416 (1882) (holding that date appearing on a deed is *prima facie* evidence of the time of its execution); *Newman v. Newman*, 208 Ill. App. 97 (1917) (discussing

statute regarding negotiable instruments which stated that the date on the instrument is *prima facie* evidence of the date of its execution).

■ Based on these propositions of law, we conclude that the "Date of Lease," indicated on the face of the lease in question as December 12, 1991, constitutes *prima facie* evidence of the date when the lease took effect. Plaintiff has not introduced any contravening evidence or affidavits which demonstrate that the lease was executed on any date other than December 12, 1991. Since the execution date is unrefuted by any contrary evidence and no material issue of fact has been postured, we must conclude that the lease came into effect prior to the date of the Act's enactment. See *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933, 752 N.E.2d 532, 545 (2001) (where a party moving for summary judgment satisfies its initial burden of production, the burden shifts to the respondent to present some factual basis that would entitle it to a judgment in its favor).

Having reached this conclusion, we now turn to defendant's assertion that the Act does not apply to the instant lease because *prima facie* evidence exists to demonstrate that the lease was executed prior to the effective date of the Act. Defendant argues that, according to Illinois law, statutes are presumed to apply prospectively unless the clear language of the statute demonstrates that retroactive application was intended by the legislature, and because the Act does not explicitly state that it is to be applied retroactively, it does not apply to the instant lease. Plaintiff does not dispute this assertion in his brief and appears to concede that the Act would not apply if the lease were executed prior to its effective date. While we do not necessarily agree that the authority cited by defendant in support of its position is sufficient to demonstrate that the Act would not apply to the instant lease, we need not consider the merits of this issue because even if the trial court did err in granting summary judgment on this ground, plaintiff's overall position would not be improved.

Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment because demands were made for payment of gas charges incurred during plaintiff's lease with NHP, and plaintiff paid those charges. Plaintiff concedes that NHP transferred its lease to Draper & Kramer before the demand for payment was made, and even though he was charged for gas usage that occurred during the term of his lease with NHP, the actual demand for payment did not come from NHP, but from Draper & Kramer. Nevertheless, plaintiff maintains that NHP remains liable for the duties and liabilities contained within its lease, even though it assigned its interest to another party.

In support of this assertion, plaintiff calls our attention to the Il-

linois case of *Intaglio Service Corp. v. J.L. Williams & Co.*, 95 Ill. App. 3d 708, 420 N.E.2d 634 (1981). There, the defendant agreed to construct a commercial building based on specifications set forth by the plaintiff. Once the building was constructed, the defendant and the plaintiff reached an agreement whereby the plaintiff would lease the building from the defendant for a certain period of time. *Intaglio*, 95 Ill. App. 3d at 711, 420 N.E.2d at 636-37. The parties executed the lease and the plaintiff took possession of the building, which was partially incomplete. The defendant then conveyed the lease to another party. *Intaglio*, 95 Ill. App. 3d at 712, 420 N.E.2d at 637. The plaintiff filed suit alleging breach of contract because the building was not built to specification, and the defendant asserted that he could not be held liable because he conveyed the lease. On appeal, the reviewing court held that the conveyance of the property to another party ended the privity of estate between the plaintiff and the defendant, but did not end the privity of contract. Thus, the defendant remained bound by the lease provisions. See *Intaglio*, 95 Ill. App. 3d at 715, 420 N.E.2d at 639.

NHP responds to plaintiff's argument, and his citation to *Intaglio*, by stating that the argument lacks merit and is "not relevant" to the case at bar. We agree. In order to establish a violation of the Act, a tenant must show that his landlord actually demanded payment for master metered public utilities without providing notice of the formula used to assess such charges. See 765 ILCS 740/5(a) (West 1994). In this case, the uncontested facts establish that NHP never demanded payment from Sterdjevich for gas utilities while it was the managing agent at 200 Arlington Place, despite Sterdjevich's agreement to pay for utilities during the last six months of the lease term. The facts likewise show that, while payment was eventually demanded and Sterdjevich paid the utility bills charged to him, he did not make these payments to NHP, and by his own admission, none of the damages he incurred from the payment of gas utilities occurred because of NHP's conduct.

Plaintiff nevertheless asserts that NHP violated the Act because even after relinquishing control of 200 Arlington Place to Draper & Kramer, it retained its contractual obligations as the lessor and, therefore, is responsible for the demand for payment made by Draper & Kramer for gas utilities used during the term of plaintiff's lease with NHP. In making this argument, plaintiff ignores the fact that its suit against NHP is not based on a breach of contract but, rather, is based on a violation of the Act, a statutory provision. Even if we were inclined to apply contract principles to a statutory violation, the lease or contract he entered into was not executed with NHP but, rather,

was executed with the owner of the building, namely, the Arlington Heights Limited Partnership, albeit while NHP was acting as agent of the disclosed principal. See *Peddinghaus v. Peddinghaus*, 314 Ill. App. 3d 900, 904, 733 N.E.2d 797, 800 (2000) (under common law principles of *respondeat superior*, a principal is liable for the conduct of his agent, committed in the course of business the agent was appointed to carry out, even where the agent's specific conduct was carried out without knowledge of the principal). Plaintiff admits he did not enter into a contract with NHP in his brief when he argues that rights afforded to the lessor under the lease do not extend to NHP because it is the managing agent and not the lessor under the lease. Thus, we cannot hold NHP liable for a violation of the Act on the theory that it remains liable for Draper & Kramer's actions after its lease with plaintiff has been assigned based on privity of contract principles, where NHP is not a party to the contract in question. Likewise, we could not hold the owner liable for a violation of the Act, where the plain language of the statute provides that the Act applies only to the "landlord," which in this case is NHP. For these reasons, we find that plaintiff's argument lacks merit and is insufficient to warrant reversal of the trial court's decision with respect to summary judgment.

## Sanctions

Having addressed plaintiff's contentions concerning summary judgment, we now turn to the contentions of defendants NHP and Rescorp regarding the trial court's decision to deny their motion for sanctions upon reconsideration of its original order granting sanctions against plaintiff Sterdjevich.

Defendants filed their motion for sanctions on the basis the following charges:

• Plaintiff never entered into a lease with Rescorp, but nevertheless filed a complaint asserting that Rescorp violated its lease with him and other tenants of 200 Arlington Place when it improperly assessed utility charges against them. Plaintiff purported to sustain his complaint against Rescorp by arguing that Wojciechowski, testified in her deposition that she had signed a lease with Rescorp for the period of April 18, 1991, through May 31, 1992, and that Rescorp managed the property through 1991. Plaintiff thus believed that he entered into a lease with Rescorp because he signed his lease in December 1991, when, according to Wojciechowski, Rescorp managed the building. However, defendants point out the Wojciechowski testified that while she signed her lease with Rescorp, she had no knowledge as to whether plaintiff ever entered into a lease with Rescorp.

• In his first amended complaint, plaintiff alleged that Rescorp

and NHP charged tenants for gas utilities, also relying on Wojciechowski's deposition testimony. However, defendants again point out that Wojciechowski did not testify that defendants charged plaintiff for gas usage, but stated that she believed that defendants used the same lease that was used by other landlords in the building which provided that tenants were responsible for utility payments.

• Plaintiffs filed their first amended complaint and alleged therein that the leases entered into by plaintiffs contained a specific utility provision, namely, Paragraph 7. However, the provision quoted in the complaint was not included in the leases used by NHP and Rescorp.

• Defendants' counsel sent plaintiffs' counsel a letter on May 20, 1996, after the filing of the first amended complaint, specifically advising that the leases used by Rescorp and NHP were materially different from the leases upon which the complaint was based. Defendants' counsel also included the lease between Sterdjevich and NHP and the form lease used by Rescorp. However, plaintiff chose to ignore that letter.

• On August 8, 1996, plaintiffs filed a response to defendants' motion to dismiss and asserted therein that defendants did not produce the lease between plaintiff and NHP, notwithstanding the May 20, 1996, letter.

• Sterdjevich testified in his deposition that he kept a copy of the lease he executed with NHP and that he had read the lease and understood the provisions. He was aware that his lease with NHP required him to pay utility charges after the first six months, and he stated that after the first six months, he continued to receive utilities from NHP without charge. Sterdjevich admitted that NHP never charged him for utilities throughout the duration of his lease with it. However, in response to defendant NHP's request to admit, plaintiff refused to admit that he was never charged for gas utilities by NHP.

• Although in his complaint against NHP he purported to have suffered damages, Sterdjevich admitted in his deposition that he was not aware of any damages he suffered as a result of NHP assessing or attempting to collect gas utility payments.

• Sterdjevich also admitted that in November 1992, he sent a letter to Draper & Kramer regarding his lease, and at that time, he "presumably" knew that NHP was no longer the managing agent of the building.

■ In considering whether sanctions are appropriate in this case, we look to Supreme Court Rule 137, which provides that the trial court may impose sanctions against a party or his counsel for filing a motion or pleading that is not well grounded in fact or supported by

existing law, or lacks a good-faith basis for modification, reversal, or extension of the law, or is interposed for any improper purpose. 134 Ill. 2d R. 137; *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590 (1996). Rule 137 is intended to prevent the filing of frivolous lawsuits based on falsehoods, but does not purport to penalize litigants, or their attorneys, for zealous but unsuccessful litigation. *Whitmer v. Munson*, 335 Ill. App. 3d 501, 514, 718 N.E.2d 618, 628-29 (2002). The purpose of the rule is to engender an additional remedy to parties who are victimized by frivolous filings and to protect courts from lawsuits, filed without a good-faith basis, intended only to harass. See *Whitmer*, 335 Ill. App. 3d at 516, 718 N.E. 2d at 630-31.

■ To satisfy Rule 137, a litigant is required to make a "reasonable inquiry" into the facts alleged in a pleading. *Pritzker*, 283 Ill. App. 3d at 590, 670 N.E.2d at 330. Courts are instructed to use an objective standard in evaluating what was reasonable under the circumstances as they existed at the time of filing. *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963, 753 N.E.2d 463, 469 (2001). It is not sufficient that the plaintiff "honestly believed" that the allegations raised were grounded in fact or law. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75, 651 N.E.2d 601, 607 (1995).

■ When called upon to determine whether sanctions were appropriate in a given case, we employ an abuse of discretion standard of review. *Baker*, 323 Ill. App. 3d at 963, 753 N.E.2d at 469. A trial court abuses its discretion when no reasonable person could have taken the view it adopted. *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000). "When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc.*, 315 Ill. App. 3d at 244, 732 N.E.2d at 82.

In this case, the record demonstrates that plaintiffs' first amended complaint against Rescorp and NHP contained material allegations that were singularly false and that plaintiffs either were aware or would have been made aware of the false nature of their allegations upon reasonable inquiry. As noted, plaintiffs made the following allegations in their first amended complaint: (1) that defendants "breach[ed] lease agreements entered into with the tenants at 200 Arlington Place, by assessing tenants a monthly 'gas charge' in violation of the terms of the lease and in violation of Illinois law"; (2) that defendants committed deceptive practices by failing to disclose that

tenants would be required to pay a monthly gas charge; and (3) that the leases executed between defendants and plaintiffs contained a provision which provided that tenants would be responsible for payment of individually metered utility charges. However, as previously discussed, plaintiffs knew or, upon reasonable inquiry, which would have entailed a simple review of Sterdjevich's and Green's leases, would have learned that neither Sterdjevich nor Green executed lease agreements with Rescorp, and that even if they had, Rescorp's leases did not include the language set forth in Paragraph 7.

Sterdjevich asserts herein that his naming of Rescorp in his complaint was reasonable based on the testimony of Wojciechowski, who stated in her deposition that she held a lease for a unit at 200 Arlington Place with Rescorp in April 1991. Sterdjevich asserts that he entered into a lease at 200 Arlington Place which began in December 1991, and it was therefore reasonable for him to believe that Rescorp was the managing agent of the property at that time. However, such an assertion is belied by Sterdjevich's own deposition testimony wherein he stated that he was aware that he signed a lease with NHP in December 1991, that he read and understood the lease and that he retained a copy of the lease for his own records.

Further, reasonable inquiry would have shown that, while Sterdjevich entered into a lease agreement with NHP, Paragraph 7 was not included in that lease, but instead, a provision regarding utilities was included whereby NHP agreed to provide free utilities for six months and Sterdjevich agreed to pay for utilities for an additional six months. The uncontroverted evidence shows that Sterdjevich was aware of this provision of the lease because he testified in his deposition that he did not pay utilities for the final six months of his lease term and consciously chose not to tell the management company that it had failed to charge him per the provisions of his lease agreement. Likewise, even if Sterdjevich forgot the nature of the lease provisions regarding utilities, he could have reviewed the lease and learned, through reasonable inquiry, that Paragraph 7 was not contained therein. Plaintiffs alleged in their responsive pleading that they did not have access to the leases in question because defendants did not produce them in discovery. However, the uncontroverted facts show that defense counsel sent copies of Sterdjevich's lease with NHP and a sample Rescorp lease to plaintiffs' counsel prior to the filing of the first amended complaint. Further, as previously indicated, Sterdjevich admitted in his deposition testimony that he read and understood the lease he signed with NHP and that he retained a copy of this lease in his personal files.

Additionally, Sterdjevich alleged in his first amended complaint

that he was unlawfully charged for utilities by defendants in violation of his lease, and he later asserted in his second amended complaint (which did not include any allegations against Rescorp) that NHP violated the Act by assessing utility charges to him without providing a formula for such charges in his lease. He also requested damages for these alleged charges, asserting that he was "entitled to damages caused by the defendant NHP for violations of the *** [Act] in the amount of the gas charges that were wrongfully assessed upon plaintiff Sterdjevich *** plus interest." In addition, prior to the filing of the second amended complaint, NHP filed a request to admit asking Sterdjevich to admit that NHP did not demand or receive payment from him for gas utility charges. Sterdjevich denied this statement. However, in his deposition, taken after the filing of the second amended complaint, Sterdjevich admitted that NHP never demanded payment for gas utilities from him and that he never paid NHP for utilities even though he agreed to do so for the final six months of his lease term. Sterdjevich likewise admitted that he suffered no damages as a result of NHP's conduct.

■ The evidence in this case, particularly that gleaned from Sterdjevich's own deposition testimony, demonstrated that Sterdjevich undoubtedly knew without any exercise of reasonable inquiry, and certainly could have known with reasonable inquiry, that the material allegations set forth in his pleadings and responses in this case were false. Based on this evidence, the trial court was originally inclined to grant defendants' motion for sanctions, but upon reconsideration, determined that Rule 137 sanctions were inappropriate. The trial court purported to base its decision on the rationale that "[a] lawyer, when he looks at a deposition and extracts the testimony, thinks myopically, his side only," and that his "myopic" viewpoint somehow excuses a lack of veracity in his pleadings. We are cognizant of the fact that the imposition of Rule 137 sanctions on an unsuccessful litigant is a serious penalty which a trial court may be reluctant to employ. However, in this case, we find that the trial court's reluctance was misplaced. An award of sanctions here would not have served to penalize plaintiff for filing suit and zealously advocating his position. Rather, sanctions would have penalized plaintiff for alleging facts in his pleadings that he clearly knew were false, but still continued to level against defendants. See *Whitmer*, 335 Ill. App. 3d at 516, 781 N.E.2d at 631 ("[l]itigants may not deploy the use of legal process frivolously or falsely as a weapon in a feud between neighbors or otherwise"). This court cannot turn a "blind eye" to such false filings simply because lawyers tend to think "myopically" when advocating their position. See *Whitmer*, 335 Ill. App. 3d at 517, 781 N.E. 2d at 631. For these

reasons, we reverse the trial court's judgment with respect to defendants' motion for sanctions and remand the matter for the trial court to determine appropriate sanctions pursuant to the provisions of Rule 137.[9]

## Attorney Fees

NHP next asserts that the trial court erred in denying its motion for attorney fees and litigation expenses pursuant to the provisions of the lease agreement. Plaintiff maintains the lease provision in question applies only to the lessor under the lease, and not to NHP, the managing agent. At the outset, we note that although defendant does not frame this issue as an alternative argument in the event that sanctions were found to be unwarranted, defendant's request for fees under the lease is duplicative now that we have directed the trial court to award sanctions based on the provisions set forth in Rule 137. However, because an award of attorney fees and litigation costs is discretionary under Rule 137 (134 Ill. 2d R. 137 ("an appropriate sanction *** may include an order to pay to the other party or parties the amount of reasonable expenses *** including a reasonable attorney fee")), we will nevertheless address defendant's claim to such fees as a matter of right under the express provisions of the lease.

Defendant asserts that it is entitled to attorney fees based on the language set forth in Paragraph 20(e) of the lease, which provides, in relevant part:

"(e) Tenant shall pay upon demand all Lessor's costs, charges and expenses, including the fees of counsel, agents and others retained by Lessor, incurred in enforcing Tenant's obligations hereunder or incurred by Lessor in any litigation, negotiations, or transaction in which Tenant causes Lessor, without Lessor's fault, to become involved or concerned."

NHP contends that the definition of "Lessor" in the lease includes NHP, and therefore, it is entitled to attorney fees. In addition to the

---

[9]We note here that plaintiff makes much of the fact that he initially was not given an opportunity to respond to defendants' motion for sanctions in the trial court, and therefore, he asserts now on appeal that it was inappropriate for the trial court to award sanctions in this case. We do not address that issue here because plaintiff filed a motion to reconsider and was afforded a full hearing on the issue, which ultimately resulted in the trial court denying defendants' motion for sanctions. Thus, we do not see how plaintiff's assertions in this regard have any relevance to the issue presently before this court, which does not stem from the trial court's original decision to impose sanctions but, rather, stems from the trial court's decision to deny defendants' sanctions motion.

definition of "Lessor" in the lease, NHP points to Paragraph 20(f), which it contends supports its interpretation of the "Lessor" definition. Paragraph 20(f) provides:

"All rights and remedies of the Lessor under this lease, or that may be provided by law, may be exercised by the Lessor in its own name individually or in its name as agent, and all legal proceedings for the enforcement of any such rights or remedies, including distress for rent, forcible detainer, and any other legal or equitable proceedings may be commenced and prosecuted to final judgment and execution by the Lessor, in its own name individually or by the Lessor in its legal capacity as such."

NHP further contends that plaintiff acknowledged that it was the lessor on the property as evidenced by the fact that he filed suit against it under the Act, which applies to landlords, and likewise referred to it as the lessor in some of his pleadings in the trial court.

Plaintiff, however, maintains that NHP is not entitled to attorney fees under this provision because it is not the lessor but, rather, the managing agent of the property. Plaintiff further maintains that defendant previously argued that it did not violate the Act because it assigned its lease with plaintiff to another entity, and therefore, it cannot now maintain that the same lease entitles it to payment of its attorney fees. Finally, plaintiff asserts that defendant is not entitled to payment of its fees pursuant to the lease because the parties to the lease did not contemplate this type of cause of action when they agreed to this lease provision.

In considering this issue, the threshold question is whether NHP's role in the instant lease can be construed as that of the lessor. Both parties urge us to look to the plain language of the lease, set forth on the face of the document, in making our determination. It is well settled that, when construing a lease, the principal function of this court is to give effect to the intention of the parties as ascertained from the language of the lease and to enforce the clear and unambiguous lease terms. See *Kerr Steamship Co. v. Chicago Title & Trust Co.*, 120 Ill. App. 3d 998, 1005, 458 N.E.2d 1009, 1014 (1983). However, the parties disagree as to the import of the lease language in that regard. NHP asserts that "[t]he Lease identifies the Tenant as Frank Sterdjevich, and the lessor as 'The Arlington Heights Limited Partnership by: NHP Management, Inc.,' " demonstrating that NHP is included in the definition of "Lessor." Plaintiff, on the other hand, asserts that "NHP was clearly identified as the managing agent on the face of the lease." The actual lease provision reads as follows:

"LESSOR:
THE ARLINGTON HEIGHTS LIMITED PARTNERSHIP
BY: NHP Management, Inc.
Managing Agent
200 N. Arlington Heights Rd.
Arlington Heights, IL 60004
Site office: (708)506-1056."

The plain language of this lease provision states that the lessor is the Arlington Heights Limited Partnership and that NHP is the managing agent; it does not designate NHP as the actual lessor. Indeed, the definition of "Lessor" as set forth clearly states the Arlington Heights Limited Partnership is the lessor *"By"* NHP, not that Arlington Heights Limited Partnership *and* NHP are the lessors. Thus, we cannot conclude, as NHP asserts, that it is entitled to attorney fees based on its designation as lessor in this provision of the lease.

▪ Having reached this conclusion, we now turn to NHP's contention that Paragraph 20(f) of the lease demonstrates that it is entitled to fees as the agent of the lessor. NHP asserts that Paragraph 20(f) "makes sense only if it is referring to NHP, who is identified in the Lease as an agent for another entity," and further argues that "[i]t must be presumed that this provision in the Lease was inserted for a purpose, i.e., to clarify NHP's right to bring a claim under the Lease." We disagree.

The plain language of Paragraph 20(f) states that the *lessor*, in this case Arlington Heights Limited Partnership, may operate under its own name or under the name of its agent NHP, and any legal action brought against or by the *lessor* may be brought in the name of Arlington Heights Limited Partnership or NHP. In other words, Paragraph 20(f) provides that the lessor may enforce the terms of the lease against a tenant or third party either by suing in its name or in the name of NHP. In either instance, the suit will be deemed to be that of the lessor, but it does not purport to give the managing agent in its individual capacity any rights under the agreement. Thus, when NHP is sued as NHP, managing agent, in its individual capacity, it cannot avail itself of the remedies provided under the lease, including fees. Those rights remain the rights of the lessor only.

Having reached this conclusion, we need not consider the remaining arguments raised concerning the parties' respective designations in the pleadings or the intent of the parties with respect to the attorney fees provision at the time the lease was executed.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court with respect to summary judgment and the denial of defendant

NHP's motion for attorney fees based on provisions in the lease. We reverse the trial court's judgment with respect to the denial of defendants' motion for sanctions and remand the matter to the trial court for a determination of appropriate sanctions.

Affirmed in part and reversed in part; cause remanded.

McNULTY and SMITH, JJ., concur.